## VANDERCOOK, Ex'x, v. GERE ET AL.

1. **Husband and Wife:** GOODS FOR FAMILY USE: HUSBAND'S PROPERTY
   IN WIFE'S NAME: EVIDENCE.   Action in equity to subject a wife's
   property to the payment of a judgment against the husband, on the
   ground that a portion of the debt was for family supplies, and to sub-
   ject a judgment in favor of the wife to the payment of the husband's
   debts, on the ground that the judgment was in equity the property of
   the husband; but, upon consideration of the evidence on both branches
   of the case, (see opinion,) *held* that it was insufficient to establish the
   allegations of the petition, and the judgment rendered by the court
   below in plaintiff's favor is reversed.

*Appeal from Cherokee District Court.*

SATURDAY, OCTOBER 9.

ON the twenty-fifth of September, 1877, defendant F. A.
Gere executed to plaintiff's testate his promissory note for
$400, on which a judgment was obtained in the district
court in February, 1882, which judgment remains unsatis-
fied.   When this action was instituted, a suit was pending
in the district court in favor of defendant N. M. Gere,
against the Council Bluffs Insurance Company, in which the
plaintiff therein sought to recover on a policy of insurance.

Vandercook, Ex'x, v. Gere et al.

The policy was issued to defendant F. A. Gere, and covered a horse. Defendant N. M. Gere held a chattel mortgage on said horse, and the policy of insurance provided that the loss, if any, should be paid to her as her interest might appear after the loss occurred. F. A. Gere assigned to her the policy in payment (as defendants claim) of the debt secured by the chattel mortgage. During the pendency of this action, N. M. Gere recovered judgment against the insurance company for the amount of the loss. Defendants are husband and wife. Plaintiff alleges in her petition that the $400 note on which the judgment against F. A. Gere was rendered was given for articles of merchandise which were purchased and used for the support of defendant's family, and she asks that said indebtedness be established as a charge on the separate property of defendant N. M. Gere. She also alleges that the mortgage given by F. A. Gere to N. M. Gere was given without consideration, and was executed for the purpose of hindering and delaying the creditors of F. A. Gere in the collection of their debts, and that the assignment of said insurance policy was made with the same fraudulent intent, and she prays that an amount of the judgment against the insurance company sufficient for that purpose be subjected to the payment of said judgment against F. A. Gere.

The district court found that $226 of the indebtedness evidenced by plaintiff's judgment was for necessaries for defendant's family, and established that amount as a lien on the property of N. M. Gere. It also found that the chattel mortgage given by F. A. Gere to N. M. Gere, and the assignment of the policy of insurance, were fraudulent, and subjected an amount of the judgment against the insurance company sufficient for that purpose to the satisfaction of the balance of plaintiff's judgment. Defendants appeal.

*J. D. F. Smith*, and *A. F. Meservey*, for appellants.

*Ernest C. Herrick*, for appellee.

REED, J.—The first question is whether any part of the indebtedness evidenced by plaintiff's judgment against F. A. Gere is chargeable on the property of N. M. Gere on the ground that it is for expenses of the family. Plaintiff's testate kept a general store, and for a number of years F. A. Gere purchased from him the groceries and other merchandise used and consumed by his family. The goods were generally sold on credit, and there were a number of accountings between the parties. On the twelfth of May, 1875, the amount of Gere's indebtedness at the store was $575, and he gave his promissory note for that sum. He made other purchases after that date, but the books kept in the business show that he paid the balance due on the account in December of the same year, and it appears that he had no further dealings with the store after that time. The note on which the judgment was rendered, as stated above, was executed on the twenty-fifth of September, 1877. Plaintiff claims that a portion of the debt evidenced by the note executed May 12, 1875, was unpaid at that date, and that this amount was included in the $400 note; and the question whether she is entitled to relief on this ground depends on whether she has established this claim.

Gere was examined as a witness on the trial, and he produced the $575 note. Two credits are indorsed on it in the handwriting of the book-keeper and business agent of the testate, and no question is made as to their correctness. When the last of these credits was given, it left a balance of $138.69 due on the note. But Gere testified that he paid this balance and took up the note some time before the $400 note was given, and that the consideration of that note was the surrender of a number of notes which he had given to other parties, and which had been purchased by the testate. The only evidence offered by plaintiff to establish her claim, that the $400 note included part of the indebtedness originally evidenced by the note for $575, was the testimony of the book-keeper who kept the books in the store, and with whom

the accounting was had when the notes were given. He testified that his recollection was that the $400 note was given for a balance due for merchandise, and that he had no knowledge of any other indebtedness from Gere to the testate, except the merchandise account.

It is clear from the testimony of this witness that he has no distinct recollection of the transaction in which the $400 note was given, and he is certainly mistaken as to the origin of the larger part of the indebtedness evidenced by it. His impression was that the whole amount of the indebtedness was for merchandise, but it is clear that Gere's indebtedness on account of merchandise sold him could not, at that time, have exceeded $138.69, the balance remaining due on the $575 note when the last credit was indorsed upon it. If he was not contradicted by any direct or positive evidence, perhaps his testimony would warrant us in finding that that balance, together with the interest thereon, was included in the note; but we cannot so find without entirely discrediting the witness Gere, and this we are not warranted in doing. He is neither impeached nor contradicted by positive testimony, and his story is neither unreasonable nor incredible. The burden was on plaintiff to establish this allegation of her petition. She has failed to prove it; the clear preponderance of the evidence on the question being against her. The finding of the district court on the question is contrary to the evidence, and the judgment entered upon that finding is erroneous.

II. The horse covered by the policy of insurance was purchased in the state of Nebraska from one Fairchild. The claim of defendant is that this purchase was made by the defendant N. M. Gere, and that she afterwards sold the animal to her husband, taking his promissory notes for the purchase price, and a mortgage on the horse securing the same. The price which Fairchild was to receive for the horse was $800, of which amount $500 was paid in cash at the time of the sale. A watch valued at $50 was also taken by Fairchild

in part payment. A part of the negotiations for the purchase was by correspondence, and both of the defendants participated therein. The purchase, however, was made by F. A. Gere. He went to Nebraska alone, taking with him a draft for $500, which he purchased at a bank in this state, and which was payable to his own order, and which he either indorsed to Fairchild in payment for the horse, or sold and applied the proceeds in payment. The price at which N. M. Gere claims to have sold the horse to her husband is $1,200, and that is the amount of the notes given by him to her, and which were secured by the mortgage on the horse.

It is apparent that the question whether the chattel mortgage and the assignment of the policy of insurance are valid, depends upon whether defendant N. M. Gere was the real purchaser of the horse from Fairchild. It is shown that at the time of the transaction, and for some time before that, F. A. Gere was insolvent. The farm on which the parties lived belonged to the wife, as did also the stock and personal property upon it. She was indebted, however, for a portion of the purchase price of the farm, and it was mortgaged to secure that debt. The horse was a Clydesdale stallion, and was bought for breeding purposes, and was kept for that purpose by F. A. Gere up to the time of the loss, which occurred some months after the purchase from Fairchild. F. A. Gere testified that in making the purchase he acted as agent for his wife, and that the $500 with which he purchased the draft which he took to Nebraska, when he went there to make the purchase, was given him by his wife, and was her money. Fairchild testified that he understood, at the time of the transaction, that Mrs. Gere was the purchaser, and he gave a bill of sale of the horse to her.

There is no positive evidence contradicting any of these statements. Counsel for plaintiff contends, however, that the claim that Mrs. Gere was the real purchaser from Fairchild is so unreasonable as to be unworthy of belief. He insists that it is unreasonable to suppose that a woman would,

under any circumstances, become the owner of an animal of that kind, and that it is altogether incredible that she would invest the amount of money which Mrs. Gere claims to have paid Fairchild on such an animal, when her home was incumbered by mortgage. It is also insisted that the circumstances of the alleged sale to the husband are such as to throw suspicion on the whole transaction. We think, however, that these circumstances do not overcome the positive testimony of the witnesses. The claim that Mrs. Gere was the purchaser of the horse from Fairchild is not incredible. Women do sometimes become the owners of that kind of property, and the business of breeding stock is sometimes carried on by them. We do not believe, however, that Mrs. Gere purchased said horse with the intention of carrying on that business herself. Her husband had not been successful in business. He was in bad health, and incapable of doing ordinary work on the farm. The purchase of the horse was made, no doubt, to enable him to engage in the business of breeding. It was doubtless the understanding between them from the beginning that he would ultimately become the owner of the animal. But if she furnished the money with which the purchase was made, as the evidence shows she did, she had the right to take the title to the property in herself, with the view of transferring it subsequently to him. No wrong or injustice could thereby be done to his creditors. The insurance was for $800, so that, by the assignment of the policy to her, she obtained indemnity only for the amount which she paid, and is yet bound to pay, Fairchild for the horse. Neither the husband nor his creditors are placed in any worse condition by the transaction. He had no property before the purchase which could have been appropriated to the payment of his debts, and he is in the same condition of insolvency now. They had no special claim or lien either upon the horse while he owned him, or upon the insurance after the loss occurred, and there existed no legal reason why

he might not appropriate the claim for the loss to the satisfaction of the debt he was owing his wife.

We think the claim that the mortgage and assignment were fraudulent is not proven.

REVERSED.