LYON and others *v.* ZIMMER and others.

(*Circuit Court, E. D. Virginia.* February, 1887.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—USE OF WIFE'S MONEY—WIFE AS CREDITOR.

If a husband, not acting in a fiduciary character as to the wife's income, of which she personally has entire control, collects such income habitually with her consent and acquiescence, and mixes those collections with his own moneys, and does not, at or before the time of his collecting them, give proof, by his own declarations or acts that he receives them as hers for her separate use, and holds them as a debt due from himself to her, and she permits this appropriation of her income by him to go on for a protracted period, then, and in such a condition of affairs, she cannot afterwards, on the occurrence

of a family quarrel, or insolvency, or other event, recall a permission so long indulged, and require him or his assignees to make her a creditor of her husband for the amount so collected.[1]

**2. SAME—PREFERRING WIFE IN ASSIGNMENT.**

Conversely, a husband may prefer his wife in an assignment for income of hers collected by him under an agreement with her to account to her for it, a separate account of said income being kept on his books under his name as trustee.[1]

**3. SAME—ASSIGNMENT VALID.**

In the case at bar, where the husband had preferred his wife both for rents collected by him without any clear understanding to hold them for her, and for rents collected by him with such an understanding, and also for indorsements made by her for him, and secured by trust deed on her separate estate, the court sustained the assignment as security for the last two preferences, but set it aside in so far as it attempted to secure the first.[1]

(*Syllabus by the Court.*)

In Equity.

*Robert Stiles*, *W. T. Ellyson*, and *Coke & Pickrell*, for complainants.
*McGuire & Ellett* and *John S. Wise*, for defendants.

HUGHES, J. The bill in this case is brought to set aside a preference given by Christian Zimmer, the defendant, to his wife, Rosina Zimmer, also a defendant, as set forth in the deed of assignment executed by the husband on the ninth day of April, 1886, and duly recorded. The bill charges, among other things, fraud in the execution of the deed; that the purpose was to hinder, delay, and defraud creditors; and that the amount of the pretended debt secured to the wife is unreal and fraudulent.

The leading facts of the case are as follows:

Christian Zimmer was a grocer in the city of Richmond. He had conducted business as such for more than 10 years. He finally failed, owing debts to the amount of probably seventeen or eighteen thousand dollars, one of which he claims was due to his wife, Rosina Zimmer, to the amount of $8,880, arising from rents collected by him from her separate estate, and to the further amount of $3,000 or more for which she is liable as indorser on his commercial paper. The claim of Lyon Bros. is for $1,555 on open account and promissory notes. The principal contest in the litigation, probably the only contest, is on the *bona fides* of the debt of $8,880.

The marriage of Christian and Rosina Zimmer took place in 1875. Mrs. Zimmer was then Mrs. Lipps, the widow of a former husband, Jacob Lipps. By his will, Lipps had left his wife two valuable pieces of real estate in the city of Richmond, one of them for life, the other in fee. These properties yielded an annual gross rent of about $1,200. Before the subsequent marriage of Rosina Lipps, a deed of marriage settlement was executed by Christian Zimmer and herself, conveying to a trustee named Wahman, for her separate use, free from his liabilities and control, the title of the two pieces of real estate which have been mentioned. This deed conveyed to the trustee only the *corpus* of the prop-

[1] See note at end of case.

erty, but provided that the trustee should "permit the said Rosina to use, occupy, enjoy, and possess the said real estate, and the rents, issues, and profits thereof, to take for her sole and separate use, benefit, and enjoyment, free from the marital rights and control of the said Zimmer, and from any liability for his present and future debts and contracts." It vested the property in the trustee, but reserved to the wife the right of collecting the income, and using it at her own discretion. In the course of a year or more after the marriage, the trustee named in the deed of marriage settlement ceased to be a resident of Virginia, and, under a provision of the laws of this commonwealth, Christian Zimmer himself was substituted as the trustee, with powers as defined by the settlement.

It appears that, from the beginning of his trust throughout, Zimmer collected, either himself or by his agents, the annual, or rather monthly, rents accruing from the two pieces of real estate constituting his wife's separate property. One witness testifies that, in the first years after the marriage, the understanding between Zimmer and his wife was that the rents so collected were to be put in bank for Mrs. Zimmer. The evidence shows that no moneys were ever thus deposited, and Mrs. Zimmer in her answer and cross-bill makes averments which disprove such an understanding.

As before stated, the collection of his wife's rents by Zimmer began in 1875. A witness named Walker, who came into Zimmer's employment in 1880, and began to keep his books in July of that year, testifies that after that time certain family jars occurred, once, twice, or oftener, between Mr. and Mrs. Zimmer, during which she demanded her rents, insisting upon gross rents; that Zimmer refused to make good the gross amounts, but expressed his willingness to account for the net rents; that on this basis the witness, late in 1880 or early in 1881, made up the account of rents which appears on the books of Zimmer under the head of "Rosina Zimmer, for Rents, C. Zimmer, Trustee;" that Mrs. Zimmer became reconciled to the account of net rents, and, after becoming pacified, said to her husband, "Let it remain in your hands till I call for it." This witness testified, in another part of his deposition, that Mr. Zimmer promised to pay to his wife thereafter the rents as they should become due. He testifies that he heard Zimmer promise his wife, on several occasions, that whenever she wanted the money she could get it. From January, 1885, the entries of rents in the books of Zimmer ceased. They were collected by a real-estate firm in Richmond, and credited by notes made by Zimmer, indorsed by his wife, and discounted by the firm on the faith of the rents.

The cross-bill of Mrs. Zimmer alleges, among other things, that during the time Wahman was trustee the rents of her real estate were received by Christian Zimmer with her knowledge and consent; that she had entire confidence in her husband; that for a long time she resided with him at his store, and assisted him in his business; that she knew then, and supposed always, up to a very recent period, and almost up to the date of his failure, on the ninth April, 1886, that his business

was prosperous, and he entirely solvent; that she allowed him to receive the money and use it in his business because she thought the business and himself solvent, and that so putting them was the best and safest investment she could make; that it is true she let him put the rents from her realty into his business, but it was in the belief on her part (and she believes on his also) that said business was prosperous, and the money safe; that Zimmer always promised to pay her whenever she wanted it; that she files a statement from Zimmer's books showing the amounts received on account of said rents, and paid out for expenses, showing a net balance of $8,880.43 collected by him; that she indorsed his notes to the amount of $3,170, and gave mortgage on part of her real estate to secure a part of the sum, that will fall upon her to be made good unless this deed of assignment be sustained by the court. In her answer to the original bill in this cause, Mrs. Zimmer makes substantially the same averments; especially that she allowed her husband to receive the money from the rents, and use it in his business, because she thought the business and himself solvent, and that so putting it there was the best and safest investment she could make; and that Zimmer had always told her she could get it, and all of it, whenever she wanted it.

Except the testimony of a Mrs. Seivers, which is contradicted by the answer and the cross-bill, there is no evidence in the cause showing that Zimmer's collections of rents were treated as a debt from him to his wife at a date earlier than late in 1880 or early in 1881, up to which time the net rents collected had aggregated about $4,500. At that time the book-keeper, Walker, undertook to construct an account reaching as far back as 1875, from such *data* as could be collected from old books. This account he stated in a book commenced and kept by himself, and exhibited in evidence. This account is headed "Rosina Zimmer, for Rents," to which is added, in darker ink, "C. Zimmer, Trustee." The entries in this book are not, in many cases, of the dates when the transactions actually occurred, but are inserted as of other dates; that is to say, dates at which the rents are assumed to have become due. In other words, the book was not posted from original entries. It may be added that Christian and Rosina Zimmer have had no children; and that, as the income of Mrs. Zimmer went into the business of her husband in the manner which has been described, so all the expenses of her support for the 11 years of their joint life, from 1875 to 1886, were defrayed by him.

As before stated, the principal subject of contention in this cause, if not the only one, is the question whether, as to the whole or any part of the sum of $8,880.43 which has been mentioned, C. Zimmer was a debtor to his wife in such manner as to make it competent for him to prefer this debt when he became insolvent, in a deed of assignment, to the prejudice of his mercantile creditors. It is certainly a well-settled principle of law that, if the husband collects the wife's estate, and she does not consent to it expressly, and her consent cannot be presumed from her conduct, the husband or his estate is liable for the whole amount which shall have been so collected. 2 Bright, Husb. & W. 259,

261. *Ergo*, she may become her husband's creditor, and he may prefer this debt in her favor, if the preference be given under circumstances free from fraud. 2 Story, Eq. Jur. § 1373; *Christian* v. *Keen*, 80 Va. 369.

The point of inquiry, therefore, is, the collections in this case all having been of *income* over which the husband had no power under the deed, and which he could not have collected and used except by permission and authority of his wife, what was the *status* of the moneys thus collected after coming into and remaining, some of it as much as 10 years, in the custody of the husband?

The authorities on this subject are in apparent conflict. I will notice most of those which are applicable, and have been relied on in argument. I cannot set out every fact on which the decision in each cited case was based, but will give only such facts as illustrate the principle of each decision.

In *National Bank* v. *Kimble*, 76 Ind. 203, Kimble had, on the nineteenth April, 1877, conveyed indirectly to his wife all his real estate, being 450 acres of land of his own, by deed which stated as its consideration a debt of $11,000, which was an aggregate made up of sums which at various times since 1841 he had received from the separate estate of his wife. The sums received aggregated not more than $7,000. The deed was made pending two suits against Kimble on which judgments were recovered on the twenty-eighth April, 1877, to the amount of $1,080. Executions on these judgments were in due course returned unsatisfied. Kimble had bought the tract of land in 1855 for $1,800, and it had increased in value. Kimble had used his wife's money in his business, and had mixed it with his own. He had always considered the money his after he got it, but had considered that he owed it to his wife. Some of it was received on express promise to hold it for and repay it to his wife. His family had lived on the 450-acre tract since its purchase in 1855. It was the family homestead. It does not seem that Kimble was a merchant, or that he owed other debts than those sued upon of any consequence. These judgment debts were due for indorsements. On a bill to set aside the deed as made to hinder, defraud, etc., the court sustained the deed and dismissed the bill.

In *Gochenaur's Estate*, 23 Pa. St. 460, Gochenaur had married Barbara Newswanger, and her husband and her brother had qualified on her father's estate, from which she derived in all $5,136. After her husband's death, the question arose whether the moneys making up this aggregate were a debt of the estate to the widow, or a part of the estate to be distributed among distributees. There were no creditors other than the widow, who now made claim as creditor for the first time since the receipt of the money by her husband. Witnesses testified that, at the time Gochenaur received moneys of his wife in several instances, he said it was hers, and should be hers, but that he would use it to pay those of his debts which bore interest. The commissioner before whom Gochenaur's estate was settled allowed the wife's claim on the principle that a husband's reduction into possession of the wife's estate was only *prima facie* evidence of a conversion, but that the presumption

of intent might be repelled by evidence to the contrary, the evidence in that case not being subsequent admissions, but declarations made at the time of receiving the money. The court put the case on a more conclusive ground, holding that the money came to the husband in his character as administrator, and not as husband. It allowed the wife's claim on the ground of the fiduciary character in which the money was received, and of the declarations of the husband at the time of receiving parts of it. The court cited Chancellor Kent's doctrine (2 Comm. 138) that a wife's property must come under the actual control and possession of the husband, *qua* husband, or the wife will take as survivor, instead of the personal representative of husband.

In *Syracuse Plow Co.* v. *Wing*, 85 N. Y. 424, Wing received from his wife's guardian, in May, 1844, (before the passage of the New York married woman's act of 1848,) $1,366 of her own estate. He gave a mortgage 33 years afterwards (1877) to her for that money and its interest, $4,611 in all, on real estate, and afterwards put on the same land another mortgage for $2,200. The farm had been purchased with the $1,366 received from the wife's patrimony. From time to time afterwards Wing had spoken to his wife of this money as belonging to her; and, before he incurred liabilities, had promised her that he would execute to her a paper to show for the money, but had never done so until 1878, when he gave the mortgage which has been mentioned in her favor. He had afterwards received other moneys of his wife, to the amount of $1,400, for which he gave her a second mortgage which was junior to that for $2,200 in favor of another creditor. The two mortgages were attacked as designed to hinder, delay, and defraud creditors. The court below sustained the mortgages. So did the court above sustain it, saying that the case resolved itself into questions of fact, upon which the findings of the court below were in favor of the wife.

*Roper* v. *Wren*, 6 Leigh, 38, was a case of the distribution of the husband's estate, in which the question was not between creditors and the wife in the husband's life-time. The wife's claim was allowed because she had frequently demanded and had never conceded any part of the rents and profits due her, and collected by her husband; one of the judges saying that the case was the more clear because there were no creditors to lose by the decision.

*Darkin* v. *Darkin*, 17 Beav. 578, was a case of the distribution of deceased husband's estate. There was no question between wife and husband's creditors. It was held that, as the husband's books showed that he received two promissory notes, a share of gas stock, and government consols, belonging to his wife's estate for her use, the estate was liable to her. The savings of other portions of the wife's separate estate had been invested from time to time in the names of husband and wife. Seventeen years after the marriage the husband had purchased with these savings a piece of ground, and built a house upon it, taking the deed in his own name, but executing a will devising the property to her, and made her executrix. Six years afterwards the husband made another will, devising all property generally to a brother, and making him ex-

ecutor. Although the gas stock had been transferred to the husband, and the promissory notes renewed and made payable to him, yet his account-books recognized them as belonging to the wife. The master of the rolls held as to the land that, as it was bought with wife's separate estate, and it had been agreed between the two that he should have it for his life and she afterwards, a trust had arisen for the wife, and the land did not pass under the second will. As to the notes and gas stock, the master of rolls said that the evidence showed a case which would have been governed by *Caton* v. *Rideout*, (to be mentioned below,) but for the fact that the books of the husband, which acknowledged that the dividends and interest on them were received for the benefit of the wife, and the wife had once signed the book as having received the dividends herself. The master held that this was evidence in writing of a trust, and that it was unnecessary to resort to the principle of *Rich* v. *Cockell*, 9 Ves. 369, and that the case turned on the evidence.

*Rideout* v. *Lewis*, 1 Atk. 269, was a case between a wife and a deceased husband's distributees, in which the wife's claim was allowed upon the ground that she had protested all the time against the amount paid her upon the income of her separate estate as being only a part of what was her due. It was a matter of accounts.

*Metsker* v. *Bonebrake*, 108 U. S. 66, 2 Sup. Ct. Rep. 351, was a case in which the husband had sold lands which were the separate property of the wife, and had used the proceeds upon an express agreement with her to return or secure them to her. The husband, after some years, became insolvent, and his insolvency was for some time unknown to his wife. After becoming insolvent, he conveyed to his wife real estate of his own equivalent in value to the amount of his wife's funds which he had used, and was forced into involuntary bankruptcy. His assignee attacked the deed as one made without consideration. The court held that the case turned altogether upon the evidence. There had been sharp words and ill feeling between wife and husband about the matter before the conveyance was made, and the conveyance was finally made in pursuance of his repeated promise to do so. It was evident in the case that it had been continually claimed, and as constantly conceded, that this was a debt due the wife. The deed was therefore held to be supported by a sufficient consideration, and was sustained by the court.

In *Moore's Ex'x* v. *Ferguson*, 2 Munf. 421, the question was not between wife and creditors, but was upon the distribution of the husband's estate after his death. The wife claimed reimbursement for his collections of her separate estate as husband. The court disallowed the wife's claim on the ground that "it did not appear that in the husband's life-time the wife exercised any act of ownership over the slaves that had been her separate property, or in any respect interfered with his receipt of their profits. It appeared that the wife lived with her husband upon the usual terms of husband and wife."

In re *Gray's Estate*, 1 Pa. St. 327, was a case in which it appeared that John Gray had married Jane Reed in 1845. During the coverture Mrs. Gray had become entitled to $500, which was paid to her husband, who

afterwards died intestate. Four or five years before his death Gray said to an acquaintance several times that he had $500 of his wife's money, and intended to pay it back again, and that it should not be said that he had his wife's money. These declarations were made when Gray was out of humor. He said to another person that his wife should have the $500, and that he did not pretend to claim it. He only wanted the use of the money at that present time; then it was to go to Mrs. Gray and her children. The court said that clear proof that the husband received the wife's money as a loan will undoubtedly preserve her right of survivorship to it, but admissions subsequent to the receipt of the money are of little account. They are not sufficient of themselves. They must be received with extreme vigilance. They must be deliberate, positive, precise, clear, and consistent with each other. The testimony to establish them must be full, satisfactory, and given by impartial witnesses. The allowance to the wife which in this case had been made by the commissioner was stricken out by the court.

Caton v. Rideout, 1 Macn. & G. 599, referred to above, was a case in which the widow and executrix of a deceased husband came into possession of about £555, and the question was whether she should be charged with it as executrix, or should hold it as part of her separate estate belonging to her as income from her separate property. Her half-yearly income was £600, and she claimed that the £555 was a balance of the last half-yearly payment due to her. It had been the uniform practice of the husband's banker for 14 years before the husband's death to credit the wife's income to the husband's account. This had been done at the request and by the authority of the wife. The husband's account had been a mixed one, of which the income from the wife's estate was a part, and he had drawn checks from day to day miscellaneously on this account as he wanted money. The husband was one of three trustees of his wife's separate estate. The lord chancellor laid down, as a general principle, that, when the income due a wife from her separate estate is paid to the husband with her concurrence or by her direction, inferred from their mode of dealing with each other, the income so paid cannot be afterwards recalled. He said: "In this case there is no doubt that the money at the banker's was there on account of the husband, and not on account of the trust;" and held that the wife must account for it, as executrix, to the estate.

Humes v. Scruggs, 94 U. S. 22, was a case in which an insolvent husband, owing probably as much as $300,000, made a conveyance of certain of his real estate for the benefit of his creditors, and of other of his real estate, worth probably $20,000, for the separate use of his wife. The husband was at the time totally insolvent, and the wife was aware of the fact. The contention in behalf of the wife was that the real estate conveyed for her benefit had been purchased by the husband for her with her own money. Funds of the wife had in fact been received by the husband to the amount of not more than $7,000, and the husband had used it in his business, and mingled it with his own property, during a period of 15 years. The court held that "if the money which

a married woman might have had secured to her own use is allowed to go into the business of her husband, and be mixed with his property, and is applied to the purchase of real estate to his advantage, or for the purpose of giving him credit in his business, and is thus used for a series of years, there being no specific agreement when the same is purchased that such real estate shall be the property of the wife, the same becomes the property of the husband for the purpose of paying his debts. He cannot retain it till bankruptcy occurs, and then convey it to his wife. Fraud or no fraud is generally a question of fact, to be determined by all the circumstances of the case."

*Johnston* v. *Johnston's Adm'r,* 31 Pa. St. 450, was an action by the widow of the deceased against his administrator for $500 as an amount which had been received by her husband from her separate estate. Johnston had received part of the money in 1847, before the passage of the married woman's act of Pennsylvania, and part in 1848, after the passage of the act. He had bought a piece of real property before that act with the money received before its passage, and used the part received after the act, with the wife's consent, in fitting up the property. They then moved into it, and resided there. The husband was of intemperate habits, and had frequently expressed an intention to repay the money received from his wife's estate. The court held that the wife could not recover the money received in 1848, because he had received and converted it with her consent; and that she could not recover the money received in 1847, that being governed by the case of *Gray's Estate,* 1 Pa. St. 329, *supra.* The syllabus of the case is:

A distinct and precise declaration at the time of receiving the wife's chose in action may be sufficient to establish the relation on the part of the husband of trustee for his wife, but mere loose declarations of an intention to repay the money are not enough.

Some other cases were cited at bar, but they present no feature not embraced in those given in the foregoing review. The cases which have been set out in detail are in apparent conflict, yet I believe that a severe analysis of them would show that they are in substantial harmony. At all events, I deduce from them the following conclusions:

If a husband, not acting in a fiduciary character as to the wife's income, of which she personally has entire control, collects such income habitually with her consent and acquiescence, and mixes those collections with his own moneys, and does not, at or before the time of his collecting them, give proof, by his own declarations or acts, that he receives them as hers, for her separate use, and holds them as a debt due from himself to her, and she permits this appropriation of her income by him to go on for a protracted period, then, and in such a condition of affairs, she cannot afterwards, on the occurrence of a family quarrel, of insolvency, or other event, *recall* a permission so long indulged, and require him or his assignees to make her a creditor of her husband for the amounts so collected. If this be the law as developed by the class of cases which have been set out in the foregoing review, I do not think

it difficult to attain to a sound conclusion in the interesting and important case now under consideration.

Before stating this conclusion, however, I will allude to a feature presented by this case of the Zimmers which is not found in any of the cases which have been cited from the reporters. Mrs. Zimmer emphasizes and iterates, both in her answer to the original bill and in her cross-bill, that she *invested* the rents collected by her husband in his mercantile business. What is an *investment* of money by one person in the mercantile business of another? Is it not something more than a loan to that business? Mrs. Zimmer was a partner in life of her husband by marriage contract. They had no children, and there is a statement in the evidence that they had executed mutual wills testamentary in favor of each other. She lived for most of the time of conducting the mercantile business in the store-house, and assisted in the business. Considered in connection with these facts, what does her *investment* of her money in his business mean? Was it not a contribution of her income to the *capital* of the business? And what is "capital" but the fund dedicated to a business to support its credit, to provide for contingencies, to suffer diminution from losses, and to derive accretion from gains and profits? When Mrs. Zimmer declares that she was an investor in her husband's business, does she not say that it was his business that she looked to and trusted, and that it was not himself personally that she was dealing with as a debtor? I allude to this feature of the case under consideration as distinguishing it from all those which have been brought under review, and, as producing an equity in favor of Zimmer's mercantile creditors to share in the assets of the insolvent business in preference to the claim of one who had *invested* in that business, and assisted in its management, expecting to profit by its gains.

But, leaving the equity arising out of this peculiar feature of the present case out of consideration, I come to inquire, how this case stands under the rule of law which has been stated as established by the cases which have been brought under review. Previous to the latter part of 1880, or first of 1881, when family disagreements are first noted, and when the witness Walker was required to make up the rent-account, and enter it upon the old ledger, is there any evidence that Zimmer, at the times of collecting his wife's rents, made declarations or did acts of any sort to prove that he received them as hers, and treated himself as a debtor to her for them? I think not. Mrs. Sievers' testimony is, vaguely, that Zimmer was to put the collections to Mrs. Zimmer's credit in bank. The collections were never so deposited, and Mrs. Zimmer declares that she *invested* them in his mercantile business. Mrs. Sievers doubtless heard loose conversations of that sort, but she gives no clear, precise, definite, positive declarations of Zimmer himself that he was depositing or would deposit the collections in bank to his wife's credit. Walker's testimony as to collections anterior to the family disagreement is secondary, or even more indirect than secondary, evidence. He says that he made up the account for the period anterior to 1881 from such *data* as were available, especially from an old book that had

been damaged by the high water of 1879. This book is not in evidence, and, of course, items drawn from it by one who did not keep the book are not such proofs as a court can regard. While it is very clear to me that, in respect to rents collected by Zimmer after the latter part of 1880, he did make entries in his books, and did make declarations proving that he became debtor to Mrs. Zimmer, yet I am decided and confident in ruling that such was not the case in respect to rents collected before the first of 1881, or a month or more preceding, and that Mrs. Zimmer cannot now *recall* the collections made anterior to that date with her acknowledged permission and consent.

I think the sum of these collections can be fixed by the court, and I find that they amount to $4,500. As to this amount, so arising, I am of opinion that Zimmer was not a debtor to his wife, and that his preference of her for that amount in the deed was, however well intended, constructively fraudulent, and must be set aside by the court. In all other respects I think the deed should stand as valid.

As to so much of said deed as secures Mrs. Zimmer for the debts for which she was bound as security for her husband when he failed, there was no serious contention in argument; but, even if there had been, the recently decided case of *Christian* v. *Keen*, 80 Va. 369, is conclusive upon the right of a husband to indemnify his wife as his security, and I hold the deed good as to those items.

NOTE.

A married woman is competent to enter into a valid contract with her husband in respect to her separate estate, and such contract will be enforced. Valensin v. Valensin, 28 Fed. Rep. 599, and note. She may enforce a debt against him, in *Indiana*, Proctor v. Cole. 4 N. E. Rep. 303; *Michigan*, Youmans v. Loxley, 22 N. W. Rep. 282; *New Jersey*, Yeomans v. Petty, 4 Atl. Rep. 631; *New York*, Carpenter v. Osborne, 7 N. E. Rep. 823; *Wisconsin*, Brickley v. Walker, 32 N. W. Rep. ——; but not in *Massachusetts*, Woodward v. Spurr, 6 N. E. Rep. 521; Silverman v. Silverman, 5 N. E. Rep. 639; Bouker v. Bradford, Id. 480; Kniel v. Egleston, 4 N. E. Rep. 573.

A conveyance to a wife in repayment of loans made by her to her husband is not a voluntary conveyance; and if made to satisfy such equitable obligations, and not with intent to hinder, delay, or defraud creditors, is valid against them, Meisker v. Bonebrake, 2 Sup. Ct. Rep. 351; Procter v. Cole, (Ind.) 4 N. E. Rep. 303, and 3 N. E. Rep. 106; City Bank v. Wright, (Iowa,) 26 N. W. Rep. 35; Jones v. Brandt, (Iowa,) 10 N. W. Rep. 854; Lipscomb v. Lyon, (Neb.) 27 N. W. Rep. 731; Barrows v. Keene, (N. J.) 8 Atl. Rep. 713; Brickley v. Walker, (Wis.) 32 N. W. Rep. ——; Bresslauer v. Meissner, (Wis.) 27 N. W. Rep. 47; as is also his mortgage given to her to secure such loan, Norris v. McCanna, 29 Fed. Rep. 757; Clark v. Hezekiah, 24 Fed. Rep. 663; Hoey v. Pierron, (Wis.) 30 N. W. Rep. 692; Miller v. Krueger, (Kan.) 13 Pac. Rep. ——; and one given to secure the purchase money of property sold to him by her, Vandercook v. Gere, (Iowa,) 29 N. W. Rep. 448. A husband may, by such conveyance or mortgage, prefer his wife to other creditors. Hoes v. Boyer, (Ind.) 9 N. E. Rep. 427; Beard v. Puett, (Ind.) 4 N. E. Rep. 671; City Bank v. Wright, *supra;* Lipscomb v. Lyon, *supra.*

A conveyance to the wife of property purchased by the husband for her, but the title to which he has, without her consent, taken in his own name, is not a voluntary conveyance, but is valid against creditors. Taylor v. Duesterberg, (Ind.) 9 N. E. Rep. 909; Mitchell v. Colglazier, (Ind.) 7 N. E. Rep. 199; Heberd v. Wines, (Ind.) 4 N. E. Rep. 457.

The burden is on the wife of proving that property claimed to have been purchased from her husband was purchased for a valuable consideration paid by her, or some person for her, Hooser v. Hunt, (Wis.) 26 N. W. Rep. 442; Horton v. Dewey, (Wis.) 10 N. W. Rep. 599; and that a mortgage given by him to her was given to secure an actual indebtedness for money or property advanced by her from her separate estate, or by some person for her use. Hoey v. Pierron, (Wis.) 30 N. W. Rep. 692.

In *Maryland* the law does not presume a promise on the part of the husband to repay

money, the separate estate of the wife, appropriated by him to his own use with her knowledge and consent. Taylor v. Brown, 4 Atl. Rep. 888. The burden of proof is on the wife to show that it was invested for her benefit, and as her separate estate; and a mere general understanding to that effect between the husband and wife will not exclude *bona fide* creditors, or prefer the wife's claim to theirs. Farmers' & Merchants' Nat. Bank v. Jenkins, 3 Atl. Rep. 302.

Where there is no evidence of any agreement or understanding at the time the husband took the money, nor of any recognition by him at any time that he was to repay it, the wife will be held to have no legal claim against him therefor, nor will she be permitted to appropriate his property, nominally in repayment thereof, to the exclusion of the claims of *bona fide* creditors. Wake v. Griffin, (Neb.) 2 N. W. Rep. 461.