## MATILDA A. RODRIGUES *v.* JOHN ANDREWS RODRIGUES.

### No. 1763.

ARGUED FEBRUARY 21, 1928.          DECIDED APRIL 10, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PARSONS, J.

This is a suit in equity brought by Matilda A. Rodrigues, by George E. Jurgenson, her next friend, against complainant's husband, John Andrews Rodrigues. On September 14, 1926, at a time subsequent to the filing of the amended petition, as appears by stipulation, complainant and respondent were duly divorced, and by amendment the name of George E. Jurgenson, next friend, was stricken from the pleadings and the case thereafter proceeded in the name of Matilda A. Rodrigues, complainant, in her own right. Plaintiff's amended petition alleges in effect that plaintiff and respondent were lawfully married December 26, 1903; that at the time of the marriage to respondent plaintiff was the owner of certain real estate in Honolulu designated as numbers 1921, 1925, 1917B and 1917D, Lusitana Street, on which were situated four dwelling houses; that from the time of the marriage down to and including the 14th day of March, 1923, said dwelling houses were rented to divers persons and the moneys and rents therefor were received by respondent; that plaintiff is unable to state definitely the amount, but upon information and belief avers that the rents aggregated not less than $15,000 gross and that after deducting amounts paid for taxes, insurance, water rates and repairs there was a net amount which respondent received from such rentals of from $10,000 to $12,000, all of which moneys respondent invested in real estate for the joint use and benefit of plaintiff and respondent, although respondent took the title thereto in his own name; that at the time of her marriage plaintiff was the owner of $1,000 in cash, and that on or about the 16th day of February,

1904, plaintiff contributed to the purchase price of about one acre of land at Alewa, Honolulu, which was purchased for the price of $2,150; that said real estate was purchased jointly by plaintiff and respondent for their joint use and benefit, and was thereafter sold at a profit and the proceeds thereof reinvested in other real estate, the title to which respondent took in his own name; that at the time of her marriage plaintiff was the owner of certain real estate in Hilo which was sold on or about the 6th day of August, 1910, and from the proceeds of the sale thereof plaintiff furnished respondent $700 to be invested by him for their joint use and benefit. It is further alleged that the moneys derived from the net proceeds of the above, together with payments made by respondent, were later invested in real estate in the name of respondent for the joint use and benefit of the two.

The amended bill prayed "that upon hearing herein respondent be required to make an accounting of all investments of moneys belonging to plaintiff and of the net profits including profits from sale and rentals of all property purchased and improved with the joint moneys of the parties hereto; and to discover and produce all books, documents, contracts, deeds and records necessary for the determination of the issues herein; that decree may be entered that respondent holds title to the premises purchased with moneys belonging to plaintiff and with the profits and rents from their joint property in trust for plaintiff; that plaintiff's exact interest in said real estate may be ascertained and that a partition of said real estate, according to the respective rights of the parties hereto therein, may be made if the same can be divided in kind without prejudice to the owners thereof, otherwise that a sale thereof may be ordered, and that the proceeds of such sale may be

brought into court and divided between the parties according to their respective rights and interest and for the costs of this action; and if your plaintiff has not prayed for the proper relief, she humbly prays for such other, further and general relief as the pleadings and evidence herein may warrant and as to equity and good conscience may appertain."

Issue of fact was joined by answer which also prayed for affirmative relief for money alleged to have been expended by respondent for improvements to complainant's property; and the averments of the answer were denied by replication.

The case was tried upon the issues thus framed. The record shows the following facts: Complainant and respondent intermarried December 26, 1903, and lived together as husband and wife until their separation in the spring of 1923. Complainant's first husband died several years prior to her marriage to the respondent. At the time of her marriage to the respondent complainant had four children, the youngest being about six and the oldest about seventeen years of age. In the Rodrigues household were the complainant and respondent, complainant's children George and Fred, and for varying periods complainant's children Jacob and Annie, respondent's brother Nicolau, and a nephew of the respondent.

At the time of their marriage respondent owned an express business and the following pieces of realty in Honolulu: (a) two lots in Sereno Lane, one of which had been filled and upon which a stable had been built by the respondent, and upon the other one of which stood a house occupied by respondent's sister and her family, who paid a rental therefor of from $10 to $15 per month in addition to taking care of respondent's stable on the other lot across the lane; (b) one lot of

20,000 square feet, fenced but otherwise unimproved, in Kalihi.

On July 22, 1912, the Sereno Lane lots were sold, one to Jose Fernandez and the other to the individuals comprising the Masonry Work Company, for $900 and $1800 respectively. About 1904 the Kalihi lot was sold to John Azevedo for a recited consideration of $1500, and John Azevedo conveyed to respondent a lot in Kunawai Lane for a recited consideration of $2150. The difference, $650, was paid by respondent to Azevedo in cash. One-third of this Kunawai Lane property was sold July 22, 1919, to Mrs. Irena Kobalensky for $1000 and the residue, containing 22,820 square feet, on March 3, 1921, was sold to Look Kim, Sang Chong and Lau Kim Yan for $2500.

The following real property was acquired by respondent after his marriage to complainant:

(a) Lot 1917-C Andrews Lane, purchased March 26, 1904, from John T. Gandall for $500 and shortly thereafter improved and occupied by respondent and his family as their home;

(b) A lot purchased in 1914 from Joao Gonsalves Roberts for $216.35, upon which respondent thereafter built a garage;

(c) Lot 1, Block D, Auwaiolimu, lots bought from the government November 24, 1917, for $2500 and later sold to John Mendonca for $7250;

(d) Lot 3, Block 30, fifth land district, west slope of Punchbowl, deeded by O. P. Soares, patentee, April 27, 1918, at the government valuation of $850;

(e) Lot 4, Block 30, fifth land district, west slope of Punchbowl, deeded by Nicolau Rodrigues, patentee, May 7, 1918, at the government valuation of $1000;

(f) Lot on Lusitana Street, purchased May 21,

1919, from Francis Franks de Jesus for $2900, and still held by the respondent;

(g) Kuliouou beach lot No. 13, purchased July 20, 1922, for $1768.38, still held by the respondent.

Upon Lots 3 and 4 referred to in the foregoing paragraphs (d) and (e) respondent erected eight cottages at a contract cost of $13,300; masonry, walls, etc., extra. In 1923 or 1924 respondent sold his express business for approximately $5,000.

At the time of her marriage to the respondent in 1903 complainant owned realty in Lusitana Street which had been improved through the expenditure of money left her by her first husband. At said time there were on the land referred to four houses known as numbers 1921, 1925, 1917-B and 1917-D. For a time after marriage the parties and the members of their household occupied 1917-D, later moving to the Gandall property as above set forth. When occupied by tenants the two front houses rented for approximately $12 and $13 and the two rear houses for $8 each per month, which rentals afterwards advanced. The exact periods of occupancy, the exact dates of the increases and the exact rentals collected during the period of approximately twenty years covered by the testimony cannot be ascertained. The trial judge's finding that he believes $11,536 "to be a fair statement of the amount received" is clearly an estimate. In addition to the land and four houses last above referred to, the complainant at the time of her marriage to respondent owned a piece of land in Hilo, which thereafter, under date of August 6, 1910, was deeded to her sister, Alexandrina Barquest, for $700; and she had left from her deceased first husband's estate in money the sum of $1000.

Receipts from respondent's express business, board paid during different periods by the complainant's sons

and respondent's brother, rentals collected from complainant's and respondent's different pieces of property and other items of income were mingled in a common fund which was kept in the custody of the wife in their home in a receptacle which she refers to as a "trunk" and which her husband refers to as a "safe," of which she held the key. The testimony will not warrant a finding as to the proportion in which the wife's rentals contributed to this fund—other than that it was relatively small. Out of this common fund the complainant used to pay personal and household expenses and from it she used to turn over to her husband money with which to pay taxes, water rates, insurance, bills for repairs, construction and labor upon her separate property, for repairs upon his property, including their home, and for items of capital and operating expense in his express business. The taxes, water rates and insurance upon the wife's property were stipulated to amount to $1714.50. From "most uncertain and extremely conflicting" testimony the trial judge believed that $3,856.70 was "a fair and equitable allowance" for repairs and improvements. No account has been preserved of the various amounts expended by the wife or turned over to the husband for the other purposes above enumerated. The testimony will not support a finding as to their amount. No such finding was made by the trial judge and none is now attempted by us. What was left in the family fund after payment of all of the items above named, the complainant, according to her testimony, used to "give" to her husband. What the balances thus delivered to the husband amounted to, singly or in the aggregate, the testimony does not disclose; and as set forth in the written decision of the trial judge, "there is an entire absence of proof as to the turning over to respondent at any particular time of any definite amount

of money received from the rental of the houses of the plaintiff." There is evidence tending to show that part of the money withdrawn from the family fund was used in the purchase of the Roberts property above referred to and that part of it was used in making deferred payments at the rate of $25 per month upon property, title to which had been acquired by the husband at a date prior to his marriage. The respondent testified that from time to time the proceeds from the sale of his realty were deposited by him in the Bank of Hawaii and that payments upon his purchases and improvements of other realty were made therefrom and from money raised by him through mortgage. In 1916 or 1917 he installed at his place of business a safe in which thereafter he deposited the receipts from his express business—but he still continued to make deposits of rentals and of part of his earnings in the family trunk or safe. Complainant testified that every time her husband bought a piece of property he used to say, "For us for a rainy day." She further testified, "Many times I used to tell him, 'You buy things and put in your own name. You never put it in my name,' and he said, 'What is mine is yours and what is yours is mine.' " There is evidence to show that the $700 received by the complainant from the sale of her Hilo property was turned over to her husband and, with her knowledge and without objection on her part, was loaned, with approximately $200 more, to one Daniel L. Keyes, who executed to the respondent a promissory note therefor. This loan, according to respondent's testimony, has never been repaid. The trial judge found that "the $700.00 alleged to have been turned over by plaintiff to respondent for the purchase of real estate for their joint use and benefit, as set out in paragraph five of the amended petition, was not so turned over by the plaintiff; * * * that the

plaintiff failed to establish that all of the $700.00 received from sale of the Hilo property or any part of it was contributed toward the purchase of any particular piece of property," and further found "that the same was turned over to respondent and used by him for the purpose of a loan to an acquaintance of the respondent." Our own findings in the particulars above quoted accord with those of the trial judge.

As to the $1000 remaining in complainant's possession in 1903 from her deceased first husband's estate, referred to in an earlier part of this opinion, the decision of the trial judge says, "The court finds that the plaintiff did not furnish $1000.00 toward the purchase price of property as alleged in paragraph four of the amended petition. * * * In this connection the court states that it cannot give the credence to testimony of plaintiff which it otherwise might, in view of the conflicting and indefinite statements of the plaintiff, as well as in view of other evidence adduced in the case." The finding last above referred to was derived from conflicting testimony which was weighed and appraised by the trial judge. The finding is amply sustained by the record.

The trial judge further held that "neither a resulting nor a constructive trust" in any real estate belonging to the respondent "was established by the plaintiff by evidence which is clear, definite, unequivocal and satisfactory" and this in part for the reason that "from the statement of the plaintiff herself the moneys from all sources were so mixed that even assuming that all moneys over and above the expenses were turned over to respondent, it is impossible to state what particular amount of rents was paid over at any definite time, and the intermingling of the moneys makes it impossible to state what, if any, definite amount belonging to plain-

tiff went into any particular piece of property." This statement is supported by the facts hereinabove recited and its conclusion is based upon well established equitable principles. See *Kuwahara* v. *Kuwahara*, 23 Haw. 273, 279; *Jarrett* v. *Manini*, 2 Haw. 667, 673; *Kamihana* v. *Glade*, 5 Haw. 497, and *Ah Leong* v. *Ah Leong*, 29 Haw. 770, 773. No appeal was taken by the complainant from the judge's refusal to decree a trust in the respondent's realty as prayed in the bill of complaint.

After holding that an equitable lien in favor of the wife could not be impressed upon the respondent's realty, the trial judge retained jurisdiction of the case in order to afford other and related equitable relief and decided that the gross rentals from the wife's separate property for the period of twenty years above referred to, believed to aggregate $11,536, less deductions in the sum of $5,571.20 for taxes, water rates, insurance, repairs and improvements, plus the $700 loan item hereinabove referred to, "must be deemed to be held in trust by the respondent for the use and benefit of the plaintiff." The net amount thus ascertained, to-wit: $6,664.80, was held to be a "debt" and, pursuant to the decision, decree was entered therefor with interest at the rate of 8% per annum from June 7, 1923, amounting to $2,113.48, and costs. It is upon respondent's appeal from the decree last above named that the case is now before us.

From the foregoing recital it is apparent that the husband has been charged by the trial judge, not with the balances turned over to the husband by his wife after her own expenditures from the family fund, not with a portion of said balances representing her interest therein, but with the entire rentals from the wife's separate estate, minus only expenditures for the repair, upkeep, etc., of said property; and this apparently upon the theory of an implied assumpsit on the part of the

husband to repay the amount of said net rentals. Despite the common law doctrine that loans between husband and wife do not create liability for repayment, and despite the provisions of married women's property acts that such acts do not authorize a married woman to contract with her husband, courts have held that in equity repayment may be decreed in proper cases. See 30 C. J. 678, 679; *In re Hill,* 190 Fed. 390; *Savage* v. *O'Neil,* 44 N. Y. 298, 301; *Woodworth* v. *Sweet,* 51 N. Y. 8, 10. "At an early day it was held that the consideration of money borrowed from the wife would in equity make the husband a trustee for the wife." *McCampbell* v. *McCampbell,* 2 Lea 661, 31 Am. Rep. 623, 625, citing *Slanning* v. *Styles,* 3 P. Wms. 334. In the present instance, however, the facts do not warrant the conclusion of an assumpsit, express or implied, on the part of the husband. So far as the Keyes loan was concerned the respondent was shown to be no more than the agent of his wife in making the loan, with none of the obligations of a promisor or guarantor. So far as the wife's rentals were concerned, these were not paid to or appropriated by him, but went, as above set forth, into a household fund of which she had the custody. There was no assumpsit on his part to repay to her any part of her own expenditures from this fund, nor to refund any part of the sums withdrawn therefrom and paid him by his wife for the specific purposes hereinabove enumerated and thereafter applied by him to those purposes. "Advancements of the wife out of her own funds toward the family expense are not regarded as advancements to the husband, or as due from him to her, or held in trust for her, nor are contributions by her to a common fund out of which family and other expenses are paid and investments made so regarded." *Agnew* v. *Agnew,* 67 Colo. 81, 83, 185 Pac. 259. So far as the bal-

ances were concerned—even if determinable, the husband was not in any event liable to repay them wholly for they were in a large part made up from deposits of his own money; and he was not liable to repay them in part, for whatever part thereof belonged to the wife was turned over to him either directly as a gift or under circumstances which implied a gift.

No question of compulsion, misrepresentation or fraud on the part of the husband is presented by pleadings or proof.

With the exception of the $700 item above referred to and the interest and cost items, the entire amount with which the husband is held chargeable in the decree appealed from was derived from income from the wife's separate property. Quoting from 30 C. J. 709: "Frequently a distinction is made between the receipt and use by the husband of the corpus or principal of the wife's estate and the receipt and use of the income thereof, it being held that a gift will not be presumed from the receipt, possession and use by the husband of the corpus or principal of the wife's separate estate, but that where the husband receives and retains, uses in his own business or otherwise appropriates to his own use, or the use of the family, the rents, profits or income of the wife's separate estate, and the wife assents thereto or does not dissent or exact from the husband an express promise to account, the transaction will be treated as, or presumed to be, a gift by the wife to the husband of such rents, profits or income." See also *Lyon* v. *Zimmer,* 30 Fed. 401, 409; *Newlin* v. *McAfee,* 64 Ala. 357, 366; *McGlinsey's Appeal,* 14 Serg. & R. (Pa.) 64, 66. In the case last above cited the reason for the rule is thus set forth: "There is great reason for this presumption, because the husband being in the receipt of this money may be induced to live at a greater

expense than he would otherwise have done, whereby the comforts of his wife as well as his own are increased. To call him to account, therefore, after the lapse of a number of years, might be ruinous and would certainly be unjust." In the case at bar it is not necessary for us to decide, and we do not decide, whether or not, in the absence of other evidence from which the facts may be determined, a presumption of gift, a presumption of loan, or other presumption arises from the receipt or use by the husband of income from the wife's separate estate. Other circumstances above set forth must be taken into account in a statement of the rule presently applicable. Quoting from the opinion of Judge Hughes in *Lyon* v. *Zimmer* cited above: "If a husband, not acting in a fiduciary character as to the wife's income, of which she personally has entire control, collects such income habitually with her consent and acquiescence and mixes those collections with his own moneys, and does not, at or before the time of his collecting them, give proof, by his own declarations or acts, that he receives them as hers, for her separate use, and holds them as a debt due from himself to her, and she permits this appropriation of her income by him to go on for a protracted period, then and in such a condition of affairs, she cannot afterwards, on the occurrence of a family quarrel * * * or other event, recall a permission so long indulged, and require him * * * to make her a creditor of her husband for the amounts so collected." With still stronger reason is the rule last above cited applicable to the case at bar where it is the wife who mixed her own collections with her husband's moneys, who herself controlled the fund, who made payments therefrom on account of household and other expenses, who delivered part of said fund to her husband for specific purposes and who "gave" him from time to time over a

period of twenty years what balances were left without any attempted segregation of her own contributions thereto and without any account of the amounts so turned over. In the circumstances above recited we conclude that it was not within the contemplation of the parties that these sums should be repaid or that they or any part of them should constitute a trust fund for the benefit of the complainant. The proof shows no "debt" and no "trust" as between the parties.

This, in our view, disposes of the case and makes it unnecessary for us to pass upon other questions presented by counsel, a ruling upon which could not change the result.

The appeal is sustained. A decree in conformity with the foregoing opinion will be entered upon presentation.

*S. C. Huber* (*W. B. Pittman* and *Huber, Kemp & Stainback* on the brief) for complainant.

*E. H. Beebe* (*O. P. Soares, Thompson, Cathcart, Beebe & Winn* and *Marguerite K. Ashford* on the briefs) for respondent.