In re HILL.

(District Court, D. Vermont.    September 30, 1911.)

1. HUSBAND AND WIFE (§ 113*)—PROPERTY OF WIFE—STATUTES.
   P. S. Vt. 3040, provides that all personal property and rights of ac-
   tion acquired by a woman before or during coverture, except by gift
   from her husband, shall be held to her sole and separate use, and neither
   the wife's separate property nor the income therefrom shall be liable
   to the disposition of her husband or liable for his debts, but that noth-
   ing contained therein shall authorize a claim by either husband or wife
   against the other for personal services.    Held that, under such act, so
   long as the wife keeps her property separate from that of her husband,
   it is her separate property.
   [Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 113.*]

2. HUSBAND AND WIFE (§ 205*)—CONTRACTS INTER SE—LOAN BY WIFE TO
   HUSBAND.
   P. S. Vt. 3037, provides that a married woman may contract with
   any person other than her husband, and bind herself and her separate
   property in the same manner as if she were unmarried, and may sue
   and be sued as to all such contracts made by her, either before or dur-
   ing coverture, without her husband being joined in the action as plain-
   tiff or defendant.    Held, that such section does not recognize contrac-
   tual relations between husband and wife, and hence a wife cannot main-
   tain a suit at law against her husband for money loaned to him; a con-
   tract between them being void at law.
   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 744,
   748–755; Dec. Dig. § 205.*]

3. HUSBAND AND WIFE (§ 13*)—PROPERTY OF WIFE—RIGHTS OF HUSBAND—
   CREDITORS' RIGHTS.
   The rights of a husband to the property of his wife are purely mari-
   tal, and, unless voluntarily exercised by the husband, cannot be enforced
   against his will by his creditor.
   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 68–
   70; Dec. Dig. § 13.*]

4. HUSBAND AND WIFE (§ 39*)—CONTRACTS INTER SE—ENFORCEMENT IN
   EQUITY.
   Where a trustee could act for the wife in maintaining her sole and
   separate estate, courts of equity will enforce her contracts with every
   one, including her husband.
   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 220,
   221; Dec. Dig. § 39.*]

5. BANKRUPTCY (§ 314*)—MONEY LOANED BY WIFE—CLAIM IN BANKRUPTCY.
   Where a wife having a separate estate obtained by inheritance fur-
   nished money to her husband with which to pay a pressing matured ob-
   ligation, and for the amount so advanced took the husband's note which
   came into the hands of her administrator, such note was properly allow-
   ed against the husband's estate in bankruptcy.
   [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 314.*]

   In the matter of bankruptcy proceedings of Newell J. Hill.   On pe-
tition of the Town of Bristol, a creditor, to review the decision of
the referee allowing a claim of the estate of the bankrupt's wife for
money alleged to have been loaned to the bankrupt.   Affirmed.

   Murray Bourne, for Town of Bristol, petitioning creditor.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

MARTIN, District Judge. Petition of the town of Bristol, a creditor, for a review of the decision of the referee allowing claim of the estate of the bankrupt's wife.

The parties waive hearing and submit no briefs. The facts found by the referee are not controverted, and are as follows:

"Ada M. Hill was the wife of the said Newell J. Hill, bankrupt, and died during the winter of 1909-10. In the course of her married life she had received gifts of property from her father and grandfather, and inherited from them at their decease. This property consisted in large part of money which she deposited in her own name in a local bank. During a large part of her married life she had thus maintained an account at said bank, and had been accustomed to draw upon it by check signed by herself. On the 19th day of May, A. D. 1909, her husband, the said bankrupt, had an indebtedness of $500 to one E. W. Varney, mature, and was unable to meet the obligation. The wife drew her check for that amount in favor of said Varney, and on the same date the said bankrupt gave his note for $500 to her. The administrator of the estate of Ada M. Hill—W. N. Hill by name and a brother of the bankrupt—now presents this claim for $500 of borrowed money and interest thereon, and offers the aforesaid note in proof of the debt."

This claim was allowed by the referee on the ground that in Vermont a married woman may possess a sole and separate estate.

[1] Section 3040, Pub. St. Vt., provides:

"All personal property and rights of action acquired by a woman before coverture or during coverture, except by gift from her husband, shall be held to her sole and separate use, and neither the wife's separate property nor the rents, issues, income and products of the same shall be liable to the disposition of her husband or liable for his debts; but nothing herein contained shall authorize a claim by either husband or wife against the other for personal services."

Under this statute, so long as the wife keeps her property separate from that of her husband, it shall be held to be hers.

[2] Section 3037 of the Vermont Statutes provides:

"A married woman may make contracts with any person other than her husband, and bind herself and her separate property, in the same manner as if she were unmarried, and may sue and be sued as to all such contracts made by her, either before or during coverture, without her husband being joined in the action as plaintiff or defendant, and execution may issue against her, and be levied on her sole and separate goods, chattels and estate."

It will be readily observed that this statute does not recognize contractual relations between husband and wife. Therefore the wife cannot maintain a suit at law against her husband for money loaned to him, as a contract between them would be void in law. In some states it has been held that, where such contracts are void in law, they should of right be void in equity, notably Massachusetts. In Re Blandin, Fed. Cas. No. 1,527, Judge John Lowell held that a claim like the one at bar could be proved in bankruptcy. He contended that equitable debts are within the scope of the bankruptcy act. This case has been cited with approval by the Supreme Court of the United States. Fleitas v. Richardson, 147 U. S. 550, 13 Sup. Ct. 495, 37 L. Ed. 276. It has been frequently cited by district and circuit judges in the federal courts. But in Re Talbot (D. C.) 7 Am. Bankr. Rep. 29, 110 Fed. 924, Judge Francis C. Lowell disallowed in bankruptcy the claim of a wife against

her husband for a loan of money to him on the ground that the state courts of Massachusetts have held by a series of decisions that where money is loaned by a wife to her husband, or, conversely, there is no remedy either in law or in equity, that in Massachusetts contracts between husband and wife are void, and that a contract invalid in law has no foundation for equitable relief. "When contracts are themselves not authorized, validity cannot be imparted to them by affording a remedy for a breach of them through the medium of a court of equity." In re Talbot, supra.

The national bankruptcy court is a court of equity as well as of law. As to this the citation of authorities is unnecessary. Claims like this rest upon the state statute and the construction given it by the state courts. In many states, including Vermont, the courts hold, under statutes similar to the statutes of Vermont above quoted, that a loan of money or of chattels by a wife to her husband, not intended as a gift, may be enforced against the husband in courts of equity. In Barron v. Barron, 24 Vt. 375, Judge Isham, for the Supreme Court, carefully discusses this question. He recognized at common law the right of a husband to reduce the wife's property to his possession, that he may transfer or dispose of it, and upon his bankruptcy or insolvency it would vest in his assignees for the benefit of his creditors, and the wife, whatever may have been her fortune, may be left destitute of means of subsistence, but he says:

"To remedy this deficiency in the common law, courts of equity from the earliest period have exercised their power by giving to the wife a right to a provision out of her own property which has become termed the equity of the wife."

And, since the case of Lady Elibank v. Montoliere, 5 Ves. 737, the wife has been permitted to assert her claim in equity.

[3] Courts of equity have repeatedly held that the rights of a husband to the property of the wife are purely marital, and, unless those rights are voluntarily exercised by the husband, a creditor cannot enforce them for him or against his will. The husband at common law has only a qualified right to the property of the wife, and that right must be asserted by the husband, otherwise the court of equity, in cases of insolvency of the husband, will preserve the wife's estate for and in her behalf and in behalf of her heirs. Courts of chancery have for ages admitted in evidence agreements between husband and wife relating to the husband's acts of possession, and in some instances they have construed such acts as having created a trusteeship on his part. See Porter v. Bank of Rutland, 19 Vt. 410; 2 Kent, 146. In Clinton v. Hooper, 1 Ves. 186, the court held that it appearing from the evidence that the wife had claimed that her husband was debtor, and he having recognized himself as such by proposing to pay her, she was, on the death of her husband, a creditor.

There are many cases in which injunctions have been granted restraining the husband from enforcing his legal remedies to obtain the wife's property or to reduce the same to his possession, and this was regarded, under the common law, as a salutary rule in cases of insolvency of the husband. Where the wife has retained her equity in her

own estate by not permitting it to be appropriated by her husband, courts of equity will enforce those rights against the heirs of the husband and courts of bankruptcy against the creditors. Even if the husband appropriated the property of his wife, but under circumstances showing that it was to be repaid to her, then she will stand in equity as a creditor of the husband, and her claim will be enforced as against his executors. This principle of the common law that the legal existence of the wife is merged in that of the husband, and therefore they can make no contracts between themselves, gave rise to the interposition of trustees to act for and in behalf of a married woman in the preservation of her separate estate, and courts of equity for more than a hundred years have disregarded the old rule, and have treated the husband and wife as distinct persons, capable of contracting with each other, and of having separate estates. Story's Equity, § 1368. The statute of Vermont provides for separate estates, and the courts will look into the understanding and agreements between husband and wife as to the preservation of the separate estate of the wife.

[4] It is now practically settled in most states of the Union that, where a trustee could act for the wife in maintaining her sole and separate estate, courts of equity will enforce her agreements and contracts with anybody and everybody, including the husband. Justice Story (2 Story's Equity, § 1372) states:

"That if the husband should, for good reasons, after marriage, contract with his wife that she should separately possess and enjoy property bequeathed to her, the contract would be upheld in equity."

Chancellor Kent, in 2 Kent, 147, 154, states:

"That a wife may contract with her husband, even by parol, after marriage, for a transfer of property from him, to her, or to trustees for her, provided it be for a bona fide and valuable consideration."

In Pinney et al. v. Fellows, 15 Vt. 536, the court held that upon the receipt of property by the husband from the wife, even after marriage, if for suitable reasons he entered into an agreement with the wife that she should possess and enjoy it separately from him, equity will uphold such postnuptial agreement in cases in which the claims of creditors will not be prejudiced by so doing.

In the case at bar the rights of the creditors are not prejudiced at all. The loan that the wife made to the husband was used in paying another debt, which other debt would have been provable against this estate had she not furnished the money to pay it.

[5] When it is clearly established that the wife possesses an estate acquired by gift, grant, or inheritance, and that it was understood between her and her husband that it should be kept as her separate and sole estate, though she may loan it to her husband, if the proof of the contract of the loan is untainted with fraud and clearly established, it is a provable claim against the bankrupt's estate.

In the case at bar it clearly appears that both the husband and wife recognized her estate as sole and separate from that of her husband. When she paid a debt for him and took his note therefor, the note is evidence of the fact that there was no intent on the part of either the husband or wife that that sum of money should be reduced to his pos-

session, or be separated from her estate and become a part of his estate. Under the equity powers of the state courts she could have enforced this claim against her husband had he been solvent. When his estate passed into the hands of a trustee in bankruptcy, she could enforce it against that trustee. Her administrator has the same power, acting for and in behalf of her heirs, whoever they may be. In re Foss (C. C.) 17 Am. Bankr. Rep. 439, 147 Fed. 790; Jackson v. Jackson, 91 U. S. 122, 23 L. Ed. 258; Smithsonian Institution v. Meech, 169 U. S. 398, 18 Sup. Ct. 396, 42 L. Ed. 793; Fleitas v. Richardson, 147 U. S. 550, 13 Sup. Ct. 495, 37 L. Ed. 276.

The order of the referee is affirmed.