# SUPREME COURT—IN EQUITY.

---

## Paul F. Jarrett, by his Father and next Friend, William Jarrett, *vs.* Paul Manini.

A trust was alleged in the complainant's bill, not evidenced by any writing, in opposition to an absolute deed, conveying the estate of the *cestui que trust* to the respondent; the deed stated to have been given without consideration: Held, that if the estate was conveyed to the nominal grantee, as a gift to the *cestui que trust,* it is the same in principle as if paid for by his own money, and must be regarded as a trust, *resulting from the original transaction,* which may be established by parol proof, against the answer of the grantee denying it; but such proof must be of the most conclusive character.

Allen, C. J.

This is a bill in equity, in which it is alleged that, in the early part of 1850, the complainant's father concluded an

agreement for a lease of a tract of grazing land called Lualua-
lei, situated at Waianae, Oahu, containing about seven thousand
acres, for the term of fifty years, at an annual rent of seven
hundred dollars, and entered into possession of same, although
the lease was not duly executed till the 1st day of August, 1851.

The complainant's father associated himself with the respond-
ent for the purpose of carrying on a cattle farm on said tract
of land on joint account, it being understood that the respond-
ent should reside on the estate as the active managing partner,
and the complainant should transact all the business connected
with the estate at Honolulu ; but there was no contract or
agreement entered into in writing. Whereupon the parties
purchased some cattle and stock for said land by their joint
funds ; and complainant avers that his father provided cattle,
horses and sheep from his private estate, which were placed
on the land aforesaid, which became part of the capital stock
thereof, and that he advanced money and procured stock and
property to an amount larger than the respondent.

It is further alleged that the complainant's father had been
on terms of intimacy and friendship with the respondent, who
was then childless, and who had agreed to adopt and provide
for the complainant's then an only son, who had been named
Paul in compliment to the respondent, and who was regarded
and treated as his adopted son and heir, and destined to inherit
the said property ; and that in the early part of October, 1851,
the complainant's father being in trouble and distress, on ac-
count of a threatened prosecution, conveyed all his interest in
said land, and other partnership property, to the respondent ;
that the compensation of one thousand dollars, as stated in the
deed, was not in fact paid, and that the words " sundry other
considerations," were meant to be the adoption of the said
complainant by the respondent, and providing for him from
said estate ; and it was understood and agreed that the said
defendant, on receiving the said transfer, should formally adopt
your orator, and that the proceeds and profits accruing from
the said estate should thenceforth be for his benefit until he
should arrive at the age of maturity, when he should be entitled
to one-half of all the said property—and that in the meantime,
and during his minority, the defendant should fully and faith-

fully account with his father for all the proceeds and profits of the said land and stock.

The complainant's father often applied to the respondent to execute a document expressive of the agreement, which he from time to time postponed, although he never disowned or denied the interest of the complainant's father in said property, and said that there was no occasion for any uneasiness on his part on the subject. That the said respondent, not taking any steps for the legal adoption of the complainant, and the complainant's father having been extricated from his difficulties, called on the respondent on the 10th February, 1853, to cancel the deed and reconvey the property, so as to reinvest the property, when the respondent replied that the deed was destroyed some time ago ; and from that time, at short intervals, the complainant's father has called upon respondent to perfect the adoption, and account for the proceeds of the property, or reconvey the property, and more especially did he call upon him by letter, in 1857 and 1858, but no answer in writing was made ; but he assured complainant's father that it was all right, and that he was foolish to harrass himself on the subject. It is further alleged that, on or about the 22d December, 1859, the respondent executed a deed making over to the complainant's father, in trust for him, all the rents accruing from a certain tenement in Honolulu, being moved thereto by good and just considerations of affection towards his adopted son, Paul F. Jarrett, since the year 1851, but he refused to acknowledge the same before the proper officer, in order that it might be recorded, wherefore it became necessary to have it recorded by the mode as prescribed by law for such cases. It is further alleged that the respondent has lately refused to render any account, and denies all right of the complainant's father to demand the same in behalf of the complainant, and repudiates all claim or interest of the complainant in the estate of Lualualei, and asserts it to be his own individual property.

Whereupon, the complainant prays that the respondent may be summoned to appear and answer this bill, and that he may be ordered to file a full and true account of said estate, of the receipts, profits and emoluments thereof, and of the stock on said estate, now and formerly, and that an account may be taken

by a Master in Chancery of the receipts and disbursements of the parties, and that the respondent may be ordered to pay the moiety thereof, with the costs of this suit.

The respondent answers and says, that the father of the complainant did obtain a lease of Lualualei, which bears date August 1st, 1851, but that he had prior to that time negotiated for a lease of the same land at five hundred dollars per annum, and had employed one Turner to survey the same, and that he had paid him for his services, he having completed the survey in January, 1851 ; and that prior to the 1st August next ensuing, the respondent had put upon the land two herds of cattle, one herd of one hundred head, and had secured a herd of two hundred and thirty head, purchased by him of the late Stephen Reynolds, as guardian of the children of John C. Jones ; and he further alleges that the complainant's father took the lease to himself, although acting as agent for respondent, and, therefore, took and held the lease in trust for his use and benefit.

The respondent admits the agreement by which he and complainant's father were to associate themselves together for carrying on a cattle farm on joint account, each of the parties to furnish his proportion of stock.

The respondent denies that any cattle were furnished by joint funds, or that the complainant's father furnished any stock from his private estate ; but he avers that the cattle were provided and placed on the said land by himself, and purchased with his own funds, in the expectation that the said complainant's father would reimburse him for one-half of the outlay. He admits that the complainant's father did put on a few horses and sheep, which he subsequently took away and converted to his own use, and denies that the complainant's father ever advanced money or procured stock and property to an amount greater than himself, as is alleged in complainant's bill, in any form whatever.

The respondent admits that a friendship had existed between himself and complainant's father for many years, and that he had named his son " Paul " in compliment to him, the respondent, and that he had intended to adopt him, but it was defeated by the act of the complainant's father. The respondent admits that the complainant did execute a deed to the respon-

dent of his interest in Lualualei, but it was not prepared by W. A. Cooper, as is alleged in the bill. The respondent avers it to be in the handwriting of complainant's father, and acknowledged and witnessed by said Cooper.

The respondent denies that the consideration expressed in the deed of one thousand dollars was not paid by defendant, but that he did advance to complainant's father twenty-three hundred dollars, the said complainant's father promising to give to him security on his interest in several schooners at that time owned by said complainant's father, and that the said vessels, to wit: the "Kaluna," "Catherine" and "Kauikeouli," were afterwards sold, in order to satisfy certain demands and debts against complainant's father and himself.

He avers that he received the deed aforesaid in part payment of twenty-three hundred dollars advanced to him, and that the balance of twenty-three hundred is yet unpaid and now due him; and that "the sundry other considerations" mentioned in said deed were, that the respondent had agreed to pasture the horses then running on the land, and belonging to the defendant's father, free of charge, and that they did not refer to the adoption of the complainant and provisions for him—and the respondent denying that he ever promised to render any account of the proceeds or profits of said land or stock to the complainant's father or his son.

Respondent denies the trust, and avers that he never admitted any such arrangement to any one, and further, that the deed was made in good faith, and conveyed, *bona fide* and absolutely, the entire interest of the complainant's father in the estate to him. The respondent denies that he ever said to the complainant's father that "the deed was destroyed," or that he ever made the admissions imputed to him.

The respondent admits that he executed the deed of the 22d day of December, 1859, making over the rents of a certain tenement in Honolulu for the use and benefit of complainant, but that it had no connection or relation with the complainant's father's interest in the Lualualei estate, being moved thereto by affection for complainant, "who is in said deed styled as the adopted son of this defendant," although in point of fact no legal adoption of the said complainant has been made, for the reason

that the said Paul F. Jarrett, who had been living with this defendant, was taken from the care and custody of this defendant by his parents, the said complainant's father and his wife, against the express will of this defendant, and contrary to the promise and agreement of his, the said Paul Jarrett's parents, made to and with this defendant ; and this defendant asserts that he was ever willing to have thus legally adopted the said boy Paul ; and he did refuse to acknowledge the deed, because the complainant's father had refused to have the adoption of his son legally perfected, as had been agreed upon by the parties.

The respondent submits that as he holds the estate under an absolute deed, for which he has paid a valuable consideration, that he should not be compelled to render an account of the receipts, profits and emoluments thereof.

The plaintiff denies that the defendant negotiated for a lease of the land of Lualualei with an agent of the King, or that he employed one Turner to survey the same and paid him for his services, and also denies that the defendant, prior to the first of August, 1851, purchased of Stephen Reynolds two herds of cattle and put them on the land ; and he further denies that when the complainant's father took a lease to himself that he was acting as agent of the defendant, and took the said lease and held it in trust for the use and benefit of defendant,—and he denies that the cattle placed on said land were paid for by the defendant with his own funds, but avers the truth to be that he was unable to pay for the same. He further denies that he advanced to the complainant's father the sum of twenty-three hundred dollars for any purposes whatever, and denies that complainant's father offered to give the defendant security on some schooner or vessel, and denies that the adoption was defeated by any act of repliant's father, but by Manini himself, by misusing the complainant.

The respondent denies in his answer the trust as alleged in the bill, and he contends that at most it is a trust under a contract, and not a resulting trust ; that therefore the evidence of it must be in writing, and it is admitted that there was no written declaration of trust. The doctrine of trusts has hitherto been elaborately considered by the Court, but it may be well to refer to it again in this connection. There are certain

principles clearly admitted in relation to trusts. It is admitted, for example, that if a person purchases an estate with his own money, and takes the deed in the name of another, a trust results by implication of law to him who makes the advance, and parole proof is admitted to establish it, nothwithstanding by the deed the consideration is acknowledged to have been paid by the nominal grantee. So, also, when a deed has been taken by a grantee, and the money paid by the *cestui que trust.* The doctrine laid done in the case of Peabody & Tarbell, 2 Cushing, 226, is very comprehensive. " The trust will revert to the source and origin of the consideration, whatever may be its character and nature." In this case, what was the origin of the consideration ? It is admitted that the father had the title, and that he conveyed the same to the defendant, and the question arises, whether it was in trust for the benefit of his son. If parole evidence is competent to prove that the funds of a *cestui que trust* were applied to the payment of the estate, it is very evident that the same kind of evidence is competent to prove the trust, when a conveyance is made by another for his benefit. It is the same in principle. The consideration was not paid in either case. The same principle applies to the case of the payment of the money of the *cestui que trust*, or by the trustee with funds which are in equity, the funds of the *cestui que trust.* If the estate was conveyed to the nominal grantee, as a gift to the *cestui que trust*, it is the same in principle as if paid for by his own money, and it is a trust which may be established by parole proof, against the answer of the grantee denying it. The source and origin of the consideration was not from the grantee, but, from the *cestui que trust*, by his father. It is immaterial whether, it was the money of the *cestui que trust* which purchased the property, or whether it was a conveyance of property for his benefit, the consideration moving from him or from his father and not from the nominal grantee. To this extent, and for this purpose then, parole evidence is admissible. It must be borne in mind, that while it is proper to consider the relation in which the parties stand to each other, still the trust results from the original transaction, and while the complainant has laid the foundation, by the allegation in his bill, for the introduction of parole, it must be of the most conclusive character to sustain it.

It appears that the complainant's father leased the land called Lualualei in 1850, and entered into possession, although the lease was not executed till August, 1851, and it is admitted that he formed a co-partnership with the defendant for carrying on a cattle ranch. It was agreed that the respondent should reside on the estate and superintend their business there, while the complainant's father was to take charge of their business in Honolulu. It is admitted that the partners were personal friends and that it was mutually understood and agreed that the respondent should adopt the complainant as his son and heir. Such were the relations of the parties at the time the deed of the property was made to the respondent in trust for the complainant—as he alleges. It is important to know the history of the transaction at the time of the execution of the deed—Mrs. Jarrett, the mother of the complainant testifies : that she remembers that her husband, the respondent, and William Cooper, met at her house some years ago, and Mr. Cooper brought a paper with him—on being interrogated respecting its contents, he said it was a *pa'apa'a hoolimalima*, and by it, certain property was to be divided between her husband and Manini. She testifies further, that Manini said he was to manage or *hooponopono* the property, which was to consist of horses, cattle, and sheep, and the land of Lualualei, and that the cattle were on that land. Manini said the property was to remain with him till the child became twenty-one years of age, at which time Paul F. Jarrett was to have his father's proportion, that the child was to remain during his minority with Jarrett, and that he, Manini, was to sell the cattle and divide the money with Jarrett up to the majority of the boy. Until Cooper's death Manini was in the habit of visiting witness's house. He very often brought provisions to the house, such as beef, butter, sugar, mutton, fish, bananas, and sweetmeats for the children and clothes for the child. Napehi lived with Manini at that time. Napehi had heard Manini converse about the land of Lualualei. He said Jarrett's child was to have the cattle, horses and sheep, and that they were to be divided, and that when the child became twenty-one years of age, then the division with William Jarrett was to cease, and his share belonged to the child, and that while he was in minority the

Paul F. Jarrett *vs.* Paul Manini.

proceeds of the property were to belong to Jarrett. Witness states the place, but does not remember the time, whether it took place before or after the time of the small pox.

Mrs. Jarrett on being recalled further testifies, that some sheep and lumber were sent to Manini, at Waianae ; that Manini took the lumber from Jarrett's place in Kulaokahua, and it was designed for a dairy house ; that five English and two Mexican saddles were sent to Manini, the former for his stable in Honolulu, and the latter were given to the bullock boys of Manini and Jarrett. The lumber was taken by Manini several years after the writing of the *palapala*, but the sheep, fifty-five in number, were taken before.

Mr. McCully testified that Manini gave him a note to collect, dated December 21st, 1858, signed by A. S. Nuuanu, for two hundred dollars, and he requested the witness that when it was collected, he should pay one-half to Jarrett, the three parties being present. This transpired in the fall of 1859. Manini said the note was for a boat.

Mr. Von Holt testifies that in July, 1851, the firm of Von Holt & Heuck sold a few thousand feet of lumber to Jarrett. There was some other evidence showing that he had furnished materials for the cattle ranch.

The counsel for the complainant contend that the answer of the respondent is not entitled to credit, for the reason that he had suborned a witness. It appears that Timoteo was introduced as a witness by the respondent, who testifies that he was *luna* of the land when Manini and Jarrett were partners, but that they are not partners now. He says the land is of great extent for pasturage. I first heard of the dissolution of the partnership at Mr. Jarrett's house. I had occasion to see Jarrett, because Mr. Manini said he had bought Jarrett's interest, and he came with the bullock boys and drove the cattle in, and put on his own brand. Previous to that they had a partnership brand. Witness had charge of the cattle pen at the time, and he says he came to Honolulu to see Jarrett about the brand ; "and when I told him that Manini said that he had purchased the land, Jarrett replied that is right, I have nothing left, I have sold it to Manini." Witness thinks that the time was 1851. He further testifies that Jarrett was afterwards at Waianae, and he

made substantially the same declarations to himself and wife, with the additional remark that he had sold everything to Manini, and that he had paid him twenty-three hundred dollars. About one week intervened in this conversation. He further testifies that at this time Manini drove in the cattle and branded them with his brand; never saw Jarrett there afterwards. This witness subsequently comes into Court and corrects his testimony by saying that this testimony of his conversation in regard to selling the land was false—that Jarrett and he did not talk together. He says that the respondent instructed him to make these false statements. He says the respondent wrote what he was to say, and that he committed it to memory, and that the paper was at his house, which was sent for and produced in Court. He now declares that all those statements, made at his former examination, were false, and that they were made by procurement of respondent. There was much testimony introduced in relation to the hand writing of the paper referred to, but the weight of testimony was that it was the respondent's.

This effort on the part of the respondent to influence the witness to make false statements has materially impaired the integrity of his answer. A party in a suit who will attempt to suborn a witness, will not be scrupulous about his own testimony.

The conveyance of certain premises in Honolulu by respondent to complainant's father in trust for him, designating him as his adopted son, as stated in the deed, since 1851, is a corroboration of the general declaration in the bill, so far as relates to the adoption.

The argument of the length of possession has not so much weight as it would have had, had the parties sustained independent relation in the business, especially when we take into consideration that the complainant's father had made repeated efforts for a settlement by letters, which it appears were never answered. If the complainant had no rightful claim, it is somewhat singular, although by no means conclusive, that when these letters were received, that the demand was not repudiated at once. This is the usual course upon a demand for an unjust claim.

The joint note to the Jones's for cattle is another circumstance in corroboration of the allegation of interest as alleged in the bill.

In view of all the circumstances of the case, the Court are of opinion that the allegations in the bill are sustained, and order and decree that the respondent file under oath, a full and true account of the said estate since the commencement of the business on joint account, and of the receipts, profits and emoluments thereof, and that the same be referred to J. E. Barnard, one of the Masters in Chancery of this Court, to state an account of all transactions between the parties in connection with the said estate, with the usual powers given to the Master on such occasions to examine either party on oath, and to require the production of the partnership books, and all documents and vouchers in the possession of either party touching the premises.

J. Montgomery and C. C. Harris for plaintiff.

A. B. Bates and R. G. Davis for defendant.