RINSABURA KUWAHARA v. SADA KUWAHARA.

NO. 922.

APPEAL FROM CIRCUIT JUDGE, SECOND CIRCUIT.

HON. W. S. EDINGS, JUDGE.

ARGUED APRIL 3, 1916.                    DECIDED MAY 12, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

EQUITY—application of maxims—"he who comes into equity must
come with clean hands."
    The equitable maxim that "he who comes into equity must
    come with clean hands" has no application in a case where the
    relief sought is entirely proper and legal and in no way depend-
    ent upon the complainant's previous wrongful (criminal) act.
TRUSTS—evidence—weight and sufficiency.
    A constructive trust must be established by evidence which is
    clear, definite, unequivocal and satisfactory.  Decree herein re-
    versed on the evidence.

OPINION OF THE COURT BY WATSON, J.

This is an appeal by respondent from a decree in com-
plainant's favor in a suit for accounting and other relief,
wherein it was sought to hold the respondent liable as
trustee under a constructive trust for one-half of the pro-
ceeds of the sale of a certain leasehold and the improve-
ments thereon and for one-half of the rentals received by
her from said property.  The following facts were averred in
the complaint: That in February, 1906, Torakichi Kuwa-
hara, a brother of complainant, since deceased, informed
complainant that one Matsushima was the lessee of a cer-
tain lot in Wailuku and that he was willing to transfer said
lot to the complainant; that complainant, relying on the
statement and good faith of said Torakichi Kuwahara,
accepted from him what purported to be, and what the

said Torakichi Kuwahara assured complainant was, a transfer to complainant of said leasehold interest for the unexpired term; that thereupon complainant erected a building upon said lot at his sole expense, which building was completed in June, 1906; that complainant, in consideration of the payment to him by said Torakichi Kuwahara of one-half of the cost of said building, sold and transferred by oral agreement to said Torakichi Kuwahara a one-half interest in said building and placed said Torakichi Kuwahara in charge of said building as the agent and manager of complainant; that thereafter and until March, 1909, the said Torakichi Kuwahara remained in charge of said building and turned over to complainant one-half of the rents accruing therefrom; that in March, 1909, said Torakichi Kuwahara, while still agent for complainant, and knowing that the beforementioned purported transfer by Matsushima to complainant was, in fact, never signed or authorized by said Matsushima, and knowing that the said land and premises were owned by the Wailuku Sugar Company, Limited, and leased to one Masakichi Kido, for the purpose and with a design of defrauding complainant, with the consent of said Wailuku Sugar Company, and without the knowledge of complainant, procured from the said Masakichi Kido to himself, the said Torakichi Kuwahara, an assignment of the said lease covering the said premises on which complainant had erected the building aforesaid; that in November, 1909, complainant and said Torakichi Kuwahara had a quarrel over the rentals from said building which resulted in the death of said Torakichi Kuwahara; that after the death of said Torakichi Kuwahara, the respondent herein, the widow of said Torakichi Kuwahara, held and enjoyed the said building and the rents thereof as her own property until the month of May, 1915, when she sold said building for $500; that complainant has demanded of said respondent $250, the price of his half inter-

est in said building, together with one-half of the rents which the said respondent has collected since the death of her husband (November, 1909). The decree of the court (no written decision having been filed) was that the complainant have and recover from the respondent, Sada Kuwahara, the sum of $250, and that the said Sada Kuwahara pay unto the said Rinsabura Kuwahara the said sum of $250, and that she, the said Sada Kuwahara, account to and with the said Rinsabura Kuwahara of and concerning one-half of the rental and income of and from the said building collected and received by her, and upon such accounting pay over to the said Rinsabura Kuwahara all such amounts of money as may be found due him, and that the said respondent pay the costs.

The appeal herein is predicated upon two grounds: (1) that appellee failed to prove by evidence other than his own, which could only be met by the murdered man, the material allegations of his bill, and (2) that appellee, having murdered respondent's husband and predecessor in title, Torakichi Kuwahara, through whom she claims as an heir at law, has not come into court with clean hands, and therefore is not entitled to relief in a court of equity.

Considering these grounds of appeal in their inverse order we cannot sustain the contention of appellant that appellee (complainant below), by reason of having murdered respondent's husband and predecessor in title, is barred from relief in a court of equity. It appears from the undisputed evidence that complainant and Torakichi Kuwahara, in November 1909, quarreled over the rentals of the property in question during which quarrel the complainant killed said Torakichi; that complainant was tried for said killing, found guilty of the offense of murder in the second degree, and was sentenced to, and is now serving, a term of thirty-five years in Oahu prison. What the facts were leading up to the killing does not appear. We

are of the opinion that the maxim that "he who comes into equity must come with clean hands" has no such application as the respondent seeks to give it. In the case at bar the relief sought is entirely proper and legal, and, as we view it, in no wise dependent upon the complainant's previous wrongful act. Public policy does not require that the complainant be deprived of his property rights because of his criminal act, for the demands of public policy are satisfied by the proper execution of the laws and the punishment of the crime.

"An obligation will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case. *Armstrong* v. *Toler,* 11 Wheat. 258; *Faikney* v. *Reynous,* 4 Burrow, 2069; *Petrie* v. *Hannay,* 3 T. R. 418; *Farmer* v. *Russell,* 1 B. & P. 296; *Planters' Bank* v. *Union Bank,* 16 Wall. 483; *McBlair* v. *Gibbes,* 17 How. 232, 236; *Brooks* v. *Martin,* 2 Wall. 70; *Bly* v. *Second Nat. Bank,* 77 Penn. St. 453." *Armstrong* v. *American Exch. Bank,* 133 U. S. 433, 469. See also *Shaver* v. *Heller & Merz Co.* 108 Fed. 821, 834, 65 L. R. A. 878, 887; *Yale Gas Stove Co.* v. *Wilcox,* 64 Conn. 101, 128; *Upchurch* v. *Anderson* (Tenn.), 52 S. W. 917, 922; 1 Pom. Eq. Jur. §399.

"The maxim that he who comes into equity must do equity cannot deprive the complainants of their right to an accounting which is not founded in any way upon their wrongful conduct." *Ely* v. *King-Richardson Co.,* L. R. A. 1915B 1052, 1056, 265 Ill. 148, 106 N. E. 619.

The second ground of appeal (numbered (1) hereinabove), under which it is argued by counsel for appellant that the decree of the lower court is not sustained by the evidence, presents a question of more difficulty. The rule is well established that a constructive trust cannot be established by a mere preponderance of the evidence, but must be established by evidence which is clear, definite, unequivocal and satisfactory. 39 Cyc. 192, 193. A demurrer to the

bill of complaint having been overruled respondent filed an answer in which it was admitted by her that, claiming through her deceased husband, she had since his· death (November, 1909) held and enjoyed said building and the rents therefrom as her own property ·until the ·month of May, 1915, when she sold said building for $500. Thus the only material fact at issue was whether a copartnership (or tenancy in common) existed between respondent's said husband and complainant as to said building at·the time of the death of the said Torakichi. This was denied by the respondent. A careful reading of the testimony fails to convince us that the existence of a trust was established by clear and satisfactory evidence or that complainant is entitled to the relief awarded him. It appears without dispute that the building was started in February, 1906, and completed in June, 1906; that it cost about $600 or $650, and that the labor and material were wholly paid for by complainant. It is further undisputed that the original agreement between complainant and Torakichi was that the building should be erected by them as copartners. This was testified to not only by the complainant and other witnesses called by him, but was admitted by the respondent in testifying as a witness in her own behalf. She further testified, however, that there was a subsequent agreement between her husband and complainant by which Torakichi was to pay to complainant the entire cost of the building and take the same over as his own property. It was of course vital to complainant's case to show in this suit against Torakichi's widow and heir at law that the copartnership relation existed at the time of Torakichi's death. This appears only inferentially from the testimony of the complainant himself, and none of the witnesses called by him pretended to have any knowledge of the relation that existed between complainant and Torakichi with respect to the ownership of the building after the time when the

erection of the building was started (more than three years prior to Torakichi's death). Honda, the contractor who built the house, testified that he built the building for the two Kuwaharas in (as) copartners, "both of them told me it was a company;" that Rinsabura Kuwahara, the complainant, bought and paid for the lumber and paid him for building the house. The witness Koda testified that the building was put up in copartnership between Rinsabura Kuwahara and Torakichi Kuwahara; that he heard the matter talked over in a conversation at complainant's house, when, besides himself, Torakichi and another younger brother were present. When this conversation took place or that complainant was present on that occasion does not appear. The complainant did not rebut the evidence of the respondent as to the subsequent arrangement with Torakichi, and as the record stands the testimony of the respondent as to such subsequent arrangement, under which Torakichi was to pay to complainant the entire cost of the building and take the same over as his own property, is uncontradicted by the positive testimony of any witness. The testimony of the complainant is that Torakichi paid him for his (Torakichi's) share of the building $150.in June, 1906, and about a year later $170, and that from June, 1906, when the building was completed (for a period of thirty-three months), until March or April, 1909, Torakichi paid him one-half of the rentals of the building ($11.50 a month). On the other hand, the respondent identified and introduced in evidence a memorandum book which she testified was her husband's and kept by him, showing entries of payments to complainant in the handwriting of her husband as follows: March 21, 1906, $230; June 9, $175. She testified that when the $175 was paid the complainant (Rinsabura) told her husband in her presence, "Now you pay this hundred and seventy-five dollars and for the balance you can

pay by instalments eleven and a half, then you will pay us up within 22 months." She testified that those payments were for all of the interest which the complainant (Rinsabura) had in the place. She also testified that the house was not completed when the $230 was paid and that it was completed in June; that the house cost about $600, but she did not know exactly how much. Respondent also testified that she had with her, when testifying as a witness, another book of account kept by her husband for the instalments of $11.50 monthly. It occurs to us that this second book might have shed some light on the question as to whether these monthly instalments paid by Torakichi to the complainant were paid by way of rental due to the complainant as a copartner or on account of balance of purchase price under the theory testified to by respondent. But the book, so far as the record shows, was not offered in evidence, nor was any witness examined as to its contents. If the payment of these monthly instalments, which admittedly were made by Torakichi to complainant after the month of June, 1906, can be reasonably accounted for on a theory that they were for the balance of the purchase price, it seems clear that no trust can be held to be established.

We hold that the evidence as to the existence of the alleged trust is not sufficiently clear and satisfactory to justify the decree. The same is therefore reversed with costs to the appellant, and the cause is remanded.

*E. R. Bevins* for complainant.

*E. Murphy* for respondent.

### CONCURRING OPINION OF QUARLES, J.

I concur in the conclusion reached that the evidence in this case is too uncertain and doubtful to authorize the court to declare a trust in favor of the plaintiff (*Jarrett* v. *Manini*, 2 Haw. 667, 673; *Kamihana* v. *Glade*, 5 Haw. 497; 1 Perry on Trusts, 6th ed., Secs. 137, 139, 141; 39 Cyc. 166,

167). I am of the opinion that under the allegations of the bill and of the answer of respondent and the evidence the plaintiff, by killing his brother, his opponent in the matter of the controversy before the court, is in the position of one who destroys evidence, and that his evidence should be considered as opposed or rebutted by that of his brother whom he killed. "Concealing or destroying evidential material is admissible; in particular, the destruction (spoliation) of documents as evidence of an admission that their contents are as alleged by the opponent. That the fraudulent conduct was in connection with other litigation does not necessarily exclude it" (1 Gr. Ev., 16th ed., Sec. 195a, citing *Georgia R. & B. Co.* v. *Lybrend,* 99 Ga. 421; *Com.* v. *Sacket,* 22 Pick. 394; *State* v. *Staples,* 47 N. H. 113).

The more plausible theory from the evidence in the record before us is that the two Kuwaharas started in to put up the building in joint ownership; that before the building was completed the plaintiff sold his interest therein to his brother, now dead, this transaction occurring in June, 1906, after which time the plaintiff had no interest whatsoever in the property out of which the present controversy grew. Under the evidence, as well as the allegations of plaintiff's bill of complaint, his brother refused to pay him anything whatever on account of this property after March, 1909, and as this suit was commenced October 14, 1915, his claim to have a trust declared is stale. The respondent demurred to the bill of complaint on the ground that it was stale, and in my opinion the demurrer should have been sustained. "Courts will not enforce a resulting trust after a great lapse of time, or laches on the part of the supposed *cestui que trust,* especially when it appears that the supposed nominal purchaser has occupied and enjoyed the estate" (1 Perry on Trusts, 6th ed., Sec. 141).