## KAMAKAOKAUWILA HOOKAIA *v.* WAIWAIOLE KEALOHA.

### No. 1807.

ARGUED APRIL 25, 1928.     DECIDED MAY 17, 1928.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a bill in equity for the declaration and enforcement of a constructive trust relating to a piece of land on the west slope of Punchbowl. After hearing the evidence adduced by both sides, the trial judge found the issues of fact in favor of the respondent and en-

tered a decree denying the prayer of this petition. From that decree the case comes by appeal to this court.

The respondent is seventy-four years of age and has lived continuously for thirty-four years upon the land in controversy. Under the provisions of the Organic Act, section 73, she became entitled to a "preference right" to purchase a piece of land from the government at an appraised valuation. This was known to the complainant as well as to the respondent. On August 15, 1912, the respondent secured from the Territory of Hawaii a "special sale agreement" whereby the Territory agreed to issue to her a patent for the property upon payment by her of the sum of $721.80 and interest thereon and upon compliance by her with certain other conditions. The conditions having been complied with, on September 11, 1916, land patent number 6677 was issued to the respondent for the land. Thereafter, on August 14, 1923, the respondent sold and conveyed to one Regina Keahi a portion of the land described in the patent for the sum of $1000. These facts are undisputed. The complainant's claim is that prior to the making of the first payment by the respondent to the commissioner of public lands for the land, it was agreed between the complainant and the respondent that the complainant would furnish the money for paying the installments on the land and that the patent would be issued to and in the name of the complainant. The complainant further claims that in each of the years 1912, 1913, 1914, 1915 and 1916, always in the month of August, she paid to the respondent the sum of $150, or $750 in all, for the purpose of having those sums paid by the respondent to the commissioner for the land. The respondent, on the other hand, testified that no payment or payments were made to her by the complainant towards the purchase price of the land and that

she, the respondent, herself paid the whole purchase price out of her own moneys and that there was no agreement whatever between her and the complainant that the land was to be patented in the complainant's name.

The complainant further testified that in 1919 a house was built on the land at her sole expense and at a cost of $3600; that the respondent had told her very often that "the land was to be mine" (the complainant's); and that at the time of the building of the house the respondent told her "to put the house on the land which belongs to me" (the complainant). This the respondent denies, saying that the sole conversation on the subject was as follows: that in the presence and hearing of the complainant her husband said to the respondent, "Mama"; that the respondent said, "Yes"; that the husband said, "We like to put up a house for us"; that the respondent said, "I am willing that you build a house provided you listen to what I say and follow my desire"; that the husband said, "What is it?" and that the respondent replied, "If you put up a house and you leave that house and go away, or perhaps you have trouble, I want that house to remain upon the land".

Upon both of these issues the circuit judge found in favor of the respondent. He felt that the complainant was untruthful and unreliable and that the respondent was truthful. There was much in the evidence to support his findings. The preference right belonged to the respondent and not to the complainant. While the respondent had no children of her own and while the complainant was her keiki hanai (foster child), the respondent was not under any legal obligation to place the title in the complainant's name. Nor does it appear that the surrounding circumstances were such as

to place her under any moral obligation so to do. The total amount paid by the respondent for the land, including interest, was $803.09. The total claimed to have been paid by the complainant was $750. Certain discrepancies between the dates and the amounts of three withdrawals by the complainant from her savings bank account of money which, as she claimed, was intended to be paid and was paid to the respondent for the land on the one hand and the dates and amounts of the payments of the installments on account of the purchase price on the other hand, caused the circuit judge to doubt the weight of the complainant's testimony and the value to be attached to the showing of the savings bank book entries on the subject and might well have that tendency. The taxes on the property after the title became vested in the respondent were all paid from year to year by the respondent. The complainant paid no taxes and she testified that she knew that taxes were payable to the government by the owner of the land. She testified that she believed, in 1916, that the patent had been issued in her name and yet when she learned, in 1923, that the respondent had, without consulting her, sold a portion of the land to Keahi for $1000 she made no effort to recover that sum of money for herself, made no representations to the respondent on the subject and asked her no questions.

It cannot be said upon her own testimony that the complainant's conduct was entirely consistent with the belief on her part that she was the owner of the land. When in addition to this the fact is that the circuit judge has seen and heard the witnesses and observed their manner of testifying and that this court has not had those advantages in the weighing of the conflicting testimony, the case is clearly one that falls within the rule often stated by this court that in equity cases great

weight will be accorded to the findings of fact made by the trial judge upon conflicting testimony and that ordinarily his conclusions will not be disturbed.

One other witness testified on behalf of the complainant. Her testimony is in effect that on a day in August, 1912, she heard a conversation between the complainant and the respondent, during which the respondent asked the complainant to pay for the place and said that it was "going to be for her", that is, for the complainant, and that the following day she saw the complainant hand to the respondent some money but did not know its amount. She added that on other occasions she had heard the respondent say to the complainant that the place was "going to be for her". The statement thus attributed by the witness to the respondent is too ambiguous and indefinite to satisfy the requirements of the rule that in order to establish a constructive trust the evidence must be clear, convincing and satisfactory. This statement of the respondent, as testified to by the witness now under consideration, is as easily susceptible of the construction that upon the respondent's death the property would pass to the complainant by will as it is of the construction that the patent would be issued in the complainant's name. The probability that the respondent's statement, if made at all, was intended by her to refer to a devolution of title upon her death, is strengthened by the further testimony of the same witness that she had heard the respondent say that "by and by everything she had would belong to" the complainant.

The fact that the complainant admittedly paid the entire cost ($3600) of the house erected by her on the property in 1919 does not in itself support the inference that she did so in reliance upon any representation by the respondent that the property was to be put in com-

plainant's name or that the property belonged to the complainant. The trial judge's view was that the complainant built the house in the expectation and belief that the property would pass to her upon her "auntie's" death. The respondent, as above stated, had no children of her own and the complainant occupied towards her the place of a child. The trial judge having found that he could not rely upon the testimony of the complainant, and the respondent having testified expressly that she had in effect warned the complainant that the house would be built, if at all, at the complainant's peril, the finding in this respect also cannot be disturbed. Upon this finding, that the money was expended and the house built with knowledge of the fact that the land belonged to the respondent and in the face of the express warning by the owner that the complainant would build at her peril, an equitable lien does not, it is conceded by counsel, attach to the land for the amount so expended.

The decree appealed from is affirmed.

*W. B. Pittman* (also on the briefs) for complainant.

*J. A. Matthewman* (also on the brief) for respondent.