JOHN J. DE MELLO *v.* SISTINE PEDRO DE MELLO, EXECUTOR OF THE LAST WILL AND TESTAMENT OF MARIA JULIA DE MELLO, DECEASED, ET AL.

No. 2378.

SUBMITTED FEBRUARY 16, 1939.      DECIDED MARCH 4, 1939.

COKE, C. J., KEMP, J., AND CIRCUIT JUDGE STAFFORD IN PLACE OF PETERS, J., ABSENT.

OPINION OF THE COURT BY KEMP, J.

John J. De Mello, the surviving husband of Maria Julia De Mello, after the death of his said wife filed a bill in the circuit court of the first circuit against the executor of his said wife's will, her five surviving children and the issue of

a deceased child to declare a trust in petitioner's favor in certain real estate standing in the name of his deceased wife at the time of her death. It is alleged and admitted that petitioner married his said wife on the 18th day of November, 1910; that at said time he was a widower and she a widow; that he had nine children by his former marriage and that she had six children by her former marriage; that on January 22, 1912, petitioner acquired title to lots 3 and 4, block 12 of the Kaimuki tract, having theretofore purchased them under agreement of sale; that on the 26th day of September, 1913, petitioner caused said lots to be conveyed to his said wife; that on the 23d day of September, 1934, the said Maria Julia De Mello died, leaving a will which was admitted to probate, copy of which is attached as an exhibit to the bill.

It is also alleged by petitioner but denied by the respondents that petitioner's wife "urged and prevailed upon petitioner to convey to her the said hereinabove described real property, and that the said Maria Julia De Mello promised and orally agreed that if petitioner did convey said property to her, she, the said Maria Julia De Mello, would make a last Will and Testament whereby she would leave all of this real property to him, the said petitioner, but that if he, the said petitioner, predeceased her, then she would devise said property to his children by his first marriage." It is further alleged by petitioner but denied by respondents that in reliance upon said promise and oral agreement and in consideration thereof and placing full trust and confidence in his said wife, he made the conveyance of said real property to her; that after said conveyance he paid out and expended upwards of $10,000 to improve said property and increase the income therefrom; that on numerous occasions after said conveyance the said Maria Julia De Mello assured petitioner that she had made and executed a will in accordance with her promise and oral

understanding and that he, the petitioner, was named sole devisee of the above-described real property but that if he predeceased her the property would descend to his children by his first wife; that he, believing her assurance given him, never doubted or had occasion to doubt that she had made and executed her will in accordance with the terms which she had promised and to which she had orally agreed until after her death when he saw the will which was admitted to probate; that notwithstanding the promise and oral agreement the said Maria Julia De Mello, in fraud upon the rights of petitioner and in violation of her said promise and oral agreement, devised said property to her own children, leaving petitioner with but a life interest therein and leaving his children no share or interest therein; that his said wife made said promise and oral agreement never intending to keep said promise and abide by said oral agreement and therefore committed a fraud upon petitioner, and that but for said promise and oral agreement he would not have transferred and conveyed the legal title to his real property to his said wife.

The prayer of petitioner was that a trust in favor of petitioner be declared; that he be given the legal as well as the equitable title to said property; that he be placed in possession thereof and that an accounting be had of the rents and profits of said property since the death of the said Maria Julia De Mello.

In addition to the admissions and denials above the respondents, in their answer to the bill, alleged that said lots were conveyed to Maria Julia De Mello by petitioner on or about January 22, 1912, by reason of financial assistance furnished by her to petitioner and in order to protect and preserve said real property from petitioner's creditors and because of love and affection and in order to induce her to contribute her moneys and assets and labor and management to the improvement, operation and maintenance of

the same and to the payment and redemption of a mortgage on the same, all of which things were done and accomplished by her with the result that she and petitioner were able to maintain themselves largely from the rents of said property, to maintain their home thereon and keep the same free from the claim of petitioner's creditors during the many years of their married life. All of the foregoing is alleged to constitute a good and valuable consideration for said conveyance and it is alleged that by reason thereof the legal and equitable title to said property was vested in the said Maria Julia De Mello at the time of her death and that she legally and properly disposed of the same by her last will and testament.

The pleadings do not correctly state the effect of Mrs. De Mello's will. The second paragraph of her will, copy of which is attached to the bill and admitted to be a true copy, shows a devise of a life estate in the lands in question to her husband, the petitioner. The third paragraph of said will is in part as follows: "After the death of my said husband, if he pre-decease me, I will and bequeath to my children the whole of my estate, wherever situate," etc. There was no specific disposition of the fee in the real estate in which petitioner was given a life estate and no attempted disposition thereof except by the residuary clause above quoted. The taking effect of the residuary clause was made contingent upon petitioner predeceasing the testatrix. Since that contingency did not happen, the residuary clause failed and she died intestate as to all of her estate except the life estate which she devised to petitioner. (Thompson, Wills [2d ed.], § 260, p. 336.) The residuary clause, had it not failed, would have given the remainder to the same persons who take as heirs-at-law.

Petitioner John J. De Mello died testate prior to the hearing on his bill and John J. De Mello, Jr., executor of his will, was substituted as petitioner. Prior to the death

of the petitioner his evidence was perpetuated and the transcript thereof filed as an exhibit at the trial.

The documentary evidence introduced shows the following: January 22, 1912, conveyance of the lots·in question by Kaimuki Land Company to John De Mello for a recited consideration of $800 and a mortgage of the same date by John De Mello to the company for $755, which was released June 20, 1913. June 24, 1912, a conveyance of the same lots by John De Mello to his wife for a recited consideration of $800. This deed was, under the law then in force, void. (*Cummins* v. *Wond,* 6 Haw. 69.) September 26, 1913, deed from John J. De Mello and wife to W. D. Anderson who, on the same day, for a recited consideration of $1, conveyed the same lots to Mrs. De Mello who, on the same day, mortgaged one of the lots to the Mutual Building & Loan Association to secure a loan of $1000. This mortgage was released February 9, 1914. February 17, 1914, mortgage by Maria J. De Mello of one of said lots and lot 11 of the Auwaiolimu lots to the Mutual Building & Loan Association to secure a loan of $5000. On the following day John De Mello became a member of said Mutual Building & Loan Association, obligating himself to pay $75 per month on account of the foregoing mortgage. His passbook, which was introduced in evidence, shows that he made six payments of $75 each that year and four the following year, three for $75 each and one for $50. There is an unexplained penciled memorandum in said passbook showing three payments by the Waterhouse Trust Company in December, 1918, and January and February, 1919, for $75 each. Lot 11 of the Auwaiolimu tract was released from the above mortgage March 19, 1920, and the other lot, being one of the lots in question, was released June 26, 1920. June 25, 1920, a mortgage by Maria J. De Mello of one of the lots in question and said lot 11 to E. H. F. Wolter, trustee, to secure a loan of $3000, which mortgage was released February 19,

1921. Said documentary evidence also shows that on June 17, 1912, John J. De Mello gave to H. Hackfeld & Company, Limited, a chattel mortgage on his Kona business to secure the sum of $4000 and that on the following day Julia De Mello mortgaged her lands at Kukuau, Hilo, to Serrao Liquor Company to secure a loan of $305 and on July 9, 1913, she conveyed said lands to John Vierra for $1000 and on the same day John J. De Mello conveyed certain of his lands in South Kona to M. S. Carreira for $1050. On January 14, 1914, John De Mello conveyed to Manuel S. Deponte the Kona properties mortgaged to Hackfeld and as part of the consideration therefor Deponte assumed the payment of the Hackfeld mortgage and on the same day conveyed to Julia De Mello lot 11 of the Auwaiolimu tract above referred to. The Auwaiolimu lot was sold in two parcels, one on March 18, 1920, for $2050 and the other on February 19, 1921, for $2050. In all of the foregoing mortgages and conveyances by Mrs. De Mello her husband joined and in all by him she joined. Other documentary evidence consisted of various rent receipts, all signed "J. J. De Mello," acknowledging payment of rents for portions of the property in question, a contract of petitioner as contractor for the building of a house in 1921 and a bankbook of petitioner showing deposits aggregating $3820 from May, 1919, to February, 1921.

The evidence offered to establish the alleged promise and oral agreement of Mrs. De Mello to will said property to petitioner consists of the evidence of the original petitioner and the substitute petitioner. Mr. De Mello, Sr., testified that his business got slack and he could not make any more payments. He told his wife that the property was not secure in his hands. His wife begged him to put it in her hands. "I done it for safekeeping. I told her, I says 'I can't afford to give you this property.' She said, 'Oh, give it in my hands; when I die I deed it back to you.'" He then

testified that he thereupon deeded the property to her and that she, on many occasions thereafter, told him, "Don't worry; when I die this goes back to you." Mr. De Mello, Jr., testified that he was with his father and stepmother when they were discussing the transfer of title to said property to her and that she said, "I will hold this as a matter of security. Before I die I will * * * give it back to you. If you die before I do, I will divide it among your children," to which his father replied, "It is Okay with me, if you want to do it that way." He also testified to hearing his stepmother say to his father on many occasions, "It is your property; it is not mine; I am simply holding it for you."

The only other witness called in behalf of the petitioner was a son-in-law of Mr. De Mello, Sr., who testified in substance that he had known the De Mellos since about 1920; that after his marriage to Mr. De Mello's daughter he lived a close neighbor to them and visited in their home quite often; that in about 1927 the De Mellos had a prospective purchaser for the property involved in this suit who offered something in excess of $30,000 for said property; that he was present when Mr. and Mrs. De Mello were having an argument as to whether or not the offer should be accepted; that Mrs. De Mello wanted to sell but that Mr. De Mello insisted that the offer was not sufficient and that during the course of said argument Mrs. De Mello flurried up and said, "Well it is your property; you can do as you please with it."

Other evidence in support of the bill tended to establish the allegation that petitioner expended large sums of money improving said lots after the conveyance to his wife, the amount equaling or exceeding the $10,000 alleged; that the Auwaiolimu lot conveyed by Deponte to Mrs. De Mello as part of the consideration for Mr. De Mello's Kona property was at all times treated as Mr. De Mello's property and that he received and kept the proceeds of the sale therefor, amounting to more than $4000; that he also received and

kept the rents accruing from the lands in suit, paid the taxes and other expenses of said property throughout the lifetime of Mrs. De Mello and received and kept the proceeds of the sale of portions of said property by her, amounting to more than $5000. Petitioner denied that his wife gave him any financial assistance as alleged by the respondents. He admitted that his wife told him she was going on his bond but that he did not know whether or not she did. This apparently referred to the time his property was attached. He also said that she at one time gave him a few hundred dollars for safekeeping and later took it back and used it for her children and grandchildren.

It cannot be ascertained from the evidence of either of the two De Mellos whether the alleged promise of Mrs. De Mello was made to induce the conveyance of June 24, 1912, or after said conveyance but before the conveyance of September 26, 1913. The time element in most of the evidence is very uncertain.

The evidence in behalf of the respondents came from a daughter-in-law of petitioner, a son and daughter of Mrs. De Mello, and Harry T. Mills, Esq., the attorney who wrote Mrs. De Mello's will and represented the executor in the probate of said will, and the respondents upon the trial of this case.

The substance of the evidence of the daughter-in-law was that she married respondent's son in 1922 and that since 1923 she had lived within fifty feet of the home of Mr. and Mrs. De Mello; that she saw them and talked with them almost daily; that prior to the death of Mrs. De Mello she never saw John J. De Mello, Jr., at his father's home; that father and son "always cursed one another" and were not on speaking terms since her marriage in 1922; that Mrs. De Mello, in the presence of Mr. De Mello, told her that she sold her Hilo property when Mr. De Mello was attached by Hackfeld; that she mortgaged her property and withdrew

her money from the bank to pay Mr. De Mello's debts and that years passed by and she had nothing to show for it; that she heard Mr. De Mello tell Mrs. De Mello's children many times that the property did not belong to him but belonged to their mother and that he told his oldest son, the witness's husband, that he did not have any interest in the property and that she heard Mr. Mills tell Mr. De Mello that Mrs. De Mello's will gave him a life estate only.

The substance of the evidence of Mrs. De Mello's daughter is that she had lived in Honolulu for twenty-three years and visited her mother often; that she heard her mother and stepfather on many occasions discuss their business; that she heard her mother say to Mr. De Mello that she sold her property in Hilo and drew her money and released him from attachment and that she wanted her money back; that Mr. De Mello told her, the witness, in Mrs. De Mello's presence, that he had nothing to do with the Kaimuki property, that he had transferred it to his wife for the other property in Hilo; that during the twenty-three years she had lived in Honolulu she visited her mother regularly and never saw John De Mello, Jr., at his father's home.

The substance of the evidence of Mrs. De Mello's son is that he has lived in Honolulu since 1920; that from 1910 to 1914 he lived in Kona with his mother and stepfather and worked for his stepfather until the business was sold to Mr. Deponte; that on one occasion they left him in charge of the business and they started to Honolulu; that about one hour after they left the sheriff came and placed an attachment on the property; that he, the witness, telephoned his mother at Kailua and told her of the attachment and the attachment was released that same day; that after he came to live in Honolulu in 1920 he visited his mother three or four times a month; that on several occasions Mr. De Mello told him, "You children don't need to worry about this property; when your mother dies the property will be

all yours"; that he never in all the years of his residence in Honolulu saw John De Mello, Jr., at his father's house.

The substance of the evidence of Mr. Mills is that he wrote Mrs. De Mello's will; that Mr. De Mello knew he had drawn said will and on several occasions he asked the witness to tell him the contents of his wife's will and that he refused to tell him until Mrs. De Mello authorized him to tell Mr. De Mello what provision was made for him in her will; that he then told Mr. De Mello that he would have a life interest in the property but that he could not tell him any more "because your wife has not given me permission to disclose anything else"; that this disclosure was made several years before the death of Mrs. De Mello, in the presence of Mrs. De Mello and the wife of Mr. De Mello's oldest son. He also told of litigation between John De Mello, Sr., and John De Mello, Jr., in which he represented De Mello, Sr., and of the ill will that existed between De Mello, Sr., and all of his own children, saying that he "evinced the utmost hatred for his son and all of his children on many occasions."

To rebut the evidence of unfriendliness between De Mello, Sr., and his children the petitioner's witnesses testified to the friendly relations existing between the father and his son John. Further detailing of the evidence seems unnecessary.

The circuit judge, in a well-considered written opinion, reviewed the evidence and came to the conclusion that petitioner had failed to establish his case by the character of evidence required in such cases. A decree was entered dismissing the bill and petitioner has sued out a writ of error. The assignment of errors, six in number, presents the single question whether or not the decree is sustained by the evidence.

The circuit judge, after reviewing the evidence, made the following findings of fact: "I believe that there was a

general understanding between them that the property in question should be community property for the security and protection of both of them during their lives and that she agreed to protect his interest to that end by her will in the event that she should die before him. It appears that as time ran on and numerous improvements were made upon the property by the industry of Mr. De Mello and in part through the use and earnings of the property, and after it had increased greatly in value, disputes and quarrels were common between them as to the exact terms of the agreement by which the title was vested in the wife. Parts of the land were sold at different times and the proceeds were apparently used to pay indebtedness against it and for its improvement; she was apparently satisfied upon the whole with the management of it and permitted him to have the management during her life. In her will she protected him for the remainder of his life by giving him a sole life interest. From the conflicting evidence I cannot say that she ever agreed to do more than this, nor can I feel sure that he was ever justified in expecting more. There is very substantial evidence that at the time of the transfer he was not on good terms with his sons; that an unfriendly relation existed between them for sometime prior to 1913 and continued for years thereafter. I am not convinced from the evidence that he had any thoughts in mind at the time he made his deed of the property on September 26, 1913, looking to the future welfare of his children by his former wife, nor am I convinced to devise the land to his children. I cannot find that the wife did a wrong or constructive fraud by her will or that there are any equitable principles requiring that her devisees be divested of the title she gave them. * * * It is clear that petitioner knew as early as five or six years before his wife's death that her will gave him a life interest only, and he made no serious objection and did

nothing about it until more than ten months after her death."

The petitioner and his son, who alone would benefit by sustaining the bill, have both testified to the oral agreement of Mrs. De Mello to restore title of said property to petitioner by her will, provided he survived her. The death of Mrs. De Mello makes direct contradiction of this testimony difficult if not impossible but even if the testimony of the two De Mellos on this question is uncontradicted there is still a question of credibility which the trier of the facts and not this court must resolve. In other words, the question of whether or not Mrs. De Mello, whose lips are now sealed in death, made such agreement was a question of fact to be decided by the trial judge. (*Foreman* v. *Foreman,* 251 N. Y. 237, 167 N. E. 429.)

It was peculiarly the province of the chancellor, who heard and saw the witnesses testify in open court and who heard the evidence of the petitioner, which was perpetuated before the same chancellor prior to the trial, to determine the truth of the controversy. A chancellor's finding of fact from conflicting testimony heard by him will not be disturbed on review unless clearly against the preponderance of the evidence. (*Schrader* v. *Schrader,* 298 Ill. 469, 131 N. E. 602.) The rule as to the weight to be given the findings of fact of the trial judge in equity has been many times announced by this court. One of the latest announcements is to be found in *Hookaia* v. *Kealoha,* 30 Haw. 446, where the court, after pointing out that the complainant's conduct as testified to by her was entirely consistent with the belief on her part that she was the owner of the land, said: "When in addition to this the fact is that the circuit judge has seen and heard the witnesses and observed their manner of testifying and that this court has not had those advantages in the weighing of the conflicting testimony, the case is clearly one that falls within the rule often stated by this court that

in equity cases great weight will be accorded to the findings of fact made by the trial judge upon conflicting testimony and that ordinarily his conclusions will not be disturbed."

The circuit judge in the instant case was confronted with the task of trying to glean the truth from evidence that was highly conflicting and he came to the conclusion that the land upon which the petitioner seeks to engraft a trust was deeded to Mrs. De Mello by her husband as an absolute gift and in payment of money obligations to his wife as well as for the future protection of both of them. In view of the oft-repeated rule that in order to establish a constructive trust the evidence must be clear, convincing and satisfactory (*Jarrett* v. *Manini,* 2 Haw. 667; *Kuwahara* v. *Kuwahara,* 23 Haw. 273; *Hookaia* v. *Kealoha, supra; Jones* v. *Jones,* 30 Haw. 565; *Wery* v. *Pacific Trust Co.,* 33 Haw. 701), it cannot be said that the circuit judge was not justified in holding that the conveyance to Mrs. De Mello was supported by a valuable consideration and that the petitioner had failed to establish his case.

For the foregoing reasons the decree dismissing the bill is affirmed.

*S. Kashiwa, F. Patterson* and *E. J. Botts* for petitioner.
*C. B. Dwight* for respondents.